421 A.2d 674

**Margaret P. GRADEL, parent and natural guardian of Edwin J. Gradel, Jr., a minor and Edwin J. Gradel, Sr., and Margaret P. Gradel, in their own right, Appellants,**

**v.**

**William Y. INOUYE, M.D., Appellee.**

Supreme Court of Pennsylvania.

Argued April 17, 1980.

Decided Oct. 31, 1980.

James E. Beasley, Jeffrey M. Stopford, Philadelphia, for appellants.

John J. Dautrich, Philadelphia, for appellee.

Before EAGEN, C. J., and O'BRIEN, ROBERTS, NIX, LARSEN, FLAHERTY and KAUFFMAN, JJ.

## OPINION

KAUFFMAN, Justice.

This is an appeal from an order of the Superior Court reversing judgment for appellants [1] in a medical malpractice action and remanding for a new trial. The principal issues presented are: (1) the degree of certainty required to establish proximate cause when negligent performance of an undertaking to render medical services is alleged to be a substantial factor in producing physical harm, and (2) in assessing damages, the extent to which a jury properly may consider the increased risk of future metastasis [2] caused by the negligent failure to diagnose and remove a cancerous tumor before it spread to the bone. [3]

In July, 1964, when he was five years of age, Edwin J. Gradel, Jr. ("Edwin"), fell out of a tree and fractured his left forearm. He was treated by appellee, Dr. William Inouye, a board–certified orthopedic surgeon. The cast was finally removed and Edwin was discharged from Dr. Inouye's care on October 31, 1964.

In the year after the cast was removed, Edwin's mother returned him to Dr. Inouye on three occasions because a lump at the fracture site, which she had first noticed when the cast was removed on October 31, was gradually increas-

1. Appellants (plaintiffs below) are Margaret P. Gradel, parent and natural guardian of Edwin J. Gradel, Jr., a minor, and Edwin J. Gradel, Sr. and Margaret P. Gradel in their own right as parents.

2. "Metastasis" is the spreading of malignant cells through the bloodstream to the other organs of the body, particularly the lungs.

3. Jurisdiction is vested in this Court pursuant to the Judicial Code, Act of July 9, 1976, P.L. 586, No. 142, 42 Pa.C.S.A. § 724(a).

ing in size. Although Mrs. Gradel requested an x–ray at each of these visits, Dr. Inouye erroneously diagnosed the lump as a callous formation and failed to x–ray the arm or provide any other treatment.

In November, 1965, dissatisfied with Dr. Inouye's treatment and concerned about the lump's increasing size, Mrs. Gradel took Edwin to Dr. Oscar Corn, an orthopedic surgeon. X–rays revealed that a soft tissue mass had invaded the bone at the point of fracture. An excisional biopsy was performed, revealing a fibrosarcoma (cancer of the bone) of low–grade malignancy. Shortly thereafter, Dr. Corn surgically removed part of the bone and replaced it with a bone graft. Tests showed no cancer cells at either end of the incision and it was thought that all cancer cells had been removed. Unfortunately, however, a year later the cancer recurred at the same site, and on December 16, 1966, Dr. Corn amputated Edwin's left arm above the elbow.

Appellants commenced this malpractice action against Dr. Inouye claiming that his failure to take reasonable and appropriate steps to diagnose and remove the lump on Edwin's forearm, for which they specifically had sought treatment, was negligence which ultimately led to the amputation of his arm.

Appellants' medical expert, Dr. Corn, testified that the cancer, which began as a soft tissue tumor, invaded the bone sometime after the last x–ray study by Dr. Inouye on October 10, 1964, which had revealed no significant pathology. Although he could not testify precisely when the bone invasion occurred, Dr. Corn did conclude that it was long before November 20, 1965, when he was first consulted. Dr. Corn further testified that a biopsy should have been performed upon observation of the continuing growth, even before bone invasion would appear in the x–rays, because if the fibrosarcoma had been discovered before it invaded the bone, it would not have been necessary to do *any* bone operation. Thus Dr. Inouye's failure to diagnose the fibrosarcoma, testified Dr. Corn, was a substantial factor in the boy losing his arm.

Trial in the Court of Common Pleas of Philadelphia County resulted in jury verdicts of $25,000 for appellant parents and $700,000 for Edwin.[4] Appellee's post-trial motion for a new trial was dismissed, but the parents' award in excess of $10,000 was remitted. On appeal, the Superior Court (Hoffman, Cercone, and Spaeth, JJ., dissenting) reversed and remanded for a new trial on two grounds: (1) the trial court's instructions to the jury on causation were erroneous, and (2) the closing argument made to the jury by appellants' counsel was improper because it suggested that the jury could consider the possibility of metastasis of the cancer in assessing damages.[5] We granted allocatur and now reverse.[6]

I

Appellants first challenge the Superior Court's holding that the jury instructions on causation were erroneous. The disputed charge is as follows:

There is no contention in this case, as I understand it, that the cancer, that is, the fibrosarcoma was caused by any conduct of the defendant. However, *the plaintiff is entitled to recover damages for all injuries which the defendant's negligence was a substantial factor in producing.* The defendant's negligence need not be the sole

4. The trial commenced eight years after the amputation, when Edwin was 16 years old. Because of the possibility that the cancer might metastasize and spread to other parts of his body, frequent chest x-rays had been taken during the intervening years. At the time of trial, there was no evidence that the cancer had spread. Although trial testimony showed Edwin to be a healthy, physically active high school student, it also revealed that he had suffered both physically and mentally from the loss of his arm and that his earning capacity and employability had been diminished.

5. *Gradel v. Inouye,* 252 Pa.Super. 392, 381 A.2d 975 (1977).

6. Appellants claim that since no specific objections were made at trial to either the charge on causation or to closing argument, these issues were waived and should not have been considered by the Superior Court. Appellee argues, on the other hand, that his exceptions to the trial court's refusal to charge as requested on causation and on jury consideration of the possibility of future metastasis of the cancer were sufficient to preserve those issues for appellate review. We agree, and proceed to address those matters directly.

cause of the injuries; other causes may have contributed to producing the final result. The fact that some other factor may have been a contributing cause of an injury does not relieve a defendant of liability, *unless you find that such other cause would have produced the injury complained of independently of his negligence.* (Emphasis added)

The Superior Court concluded that the trial court incorrectly relied on the doctrine of *Hamil v. Bashline,* 224 Pa.Super. 407, 307 A.2d 57 (1973) (*Bashline I*), the rationale of which was rejected after the trial in this case.[7] *Hamil v. Bashline,* 243 Pa.Super. 227, 364 A.2d 1366 (1976) (*Bashline II*). However, this Court subsequently reversed *Bashline II. Hamil v. Bashline,* 481 Pa. 256, 392 A.2d 1280 (1978). The issue before us in the *Bashline* case, as here, involved the degree of certainty required of expert testimony to establish that defendant's alleged negligence in failing to properly diagnose and treat plaintiff was the *proximate cause* of the harm which occurred. In *Bashline,* we held:

> [S]uch causation may be founded upon expert opinion testimony to the effect that defendant failed to exercise reasonable care in performing an undertaking to render services to a patient which the defendant should recognize as necessary for the other's protection, that this failure increased the risk of physical harm to the patient, and that such harm did in fact result.

481 Pa. at 262, 392 A.2d at 1283.

As we recognized in *Bashline,* Section 323(a) of the Restatement of Torts has been part of the law of Pennsylvania for many years.[8]  481 Pa. at 268, 392 A.2d at 1286.  When

---

**7.** *Bashline I* held that when there is evidence that negligent conduct increased the risk of harm and that the harm was in fact sustained, it becomes a question for the jury as to whether or not the increased risk was a substantial factor in producing the harm.

**8.** Restatement (Second) of Torts § 323 (1965) provides:
§ 323. *Negligent Performance of Undertaking to Render Services—* One who undertakes, gratuitously or for consideration, to render services to another which he should recognize as necessary for the protection of the other's person or things, is subject to liability to

applicable, as it clearly is here,[9] Section 323(a) relaxes the degree of certainty ordinarily required of a plaintiff's evidence to provide a basis upon which the jury may find causation. As we held in *Bashline*,

> [O]nce a plaintiff has demonstrated that defendant's acts or omissions, in a situation to which Section 323(a) applies, have increased the risk of harm to another, such evidence furnishes a basis for the fact–finder to go further and find that such increased risk was in turn a substantial factor in bringing about the resultant harm; the necessary proximate cause will have been made out if the jury sees fit to find cause in fact.

481 Pa. 272, 392 A.2d at 1288.

The disputed charge was even more narrowly phrased: "[T]he plaintiff is entitled to recover damages for all injuries which the defendant's negligence was a *substantial factor* in producing . . . ." (Emphasis supplied). Pennsylvania law has long recognized that causation may be established by evidence that defendant's negligence was a *substantial factor* in bringing about the harm even though it was not the only factor. *Majors v. Brodhead Hotel*, 416 Pa. 265, 205 A.2d 873 (1965); *Menarde v. Philadelphia Transportation Co.*, 376 Pa. 497, 103 A.2d 681 (1954).

The Superior Court also found the charge in error because it "incorrectly shifted the burden of proof to the [defendant] by sanctioning a verdict for the [plaintiffs] unless the [defendant] affirmatively proved that the amputation would have occurred in any event." *Gradel v. Inouye*, 252 Pa.Super. 392, 407–08, 381 A.2d 975, 982 (1977). The record, however, shows that the trial court clearly charged that

> the other for physical harm resulting from his failure to exercise reasonable care to perform his undertaking, if
> (a) his failure to exercise such care increases the risk of such harm, or
> (b) the harm is suffered because of the other's reliance upon the undertaking.

**9.** Appellants' medical expert unequivocally testified that Dr. Inouye's failure to take reasonable care in the performance of his undertaking to treat Edwin's arm increased the risk of the harm suffered.

appellants bore the burden of proving that Dr. Inouye's negligence was a substantial factor in bringing about the harm.[10]

■ Although it is a plaintiff's burden to establish by a preponderance of the evidence that defendant's negligence caused the harm, the plaintiff need not exclude every possible explanation. If a plaintiff has made a *prima facie* case for the jury, "the fact that some other cause concurs with the negligence of the defendant in producing an injury does not relieve the defendant from liability unless he can show that such other cause would have produced the injury independently of his negligence." *Bashline*, 481 Pa. at 266, 392 A.2d at 1285, quoting from *Majors v. Brodhead Hotel*, 416 Pa. at 273, 205 A.2d at 878. Accordingly, we conclude that the disputed charge on causation was correct under well–established Pennsylvania law.

■ The Superior Court further found that the trial court had erred in rejecting Dr. Inouye's requested Point for Charge 14A:

14.A. The burden of proof is on plaintiff to establish that negligent treatment by defendant caused the injury complained of . . . . Plaintiff's expert is required to testify on causation in categorical terms and must state that in his opinion the act or omission charged against defendant caused the injury and consequences thereof and that if a different course of treatment had been followed, the injury would not have occurred.

**10.** The following excerpts illustrate the clarity of the trial court's charge on burden of proof:

"[T]he burden of proof in a civil case, such as this one, is upon the plaintiff." (R. 534a).

"[T]he plaintiff has the burden of proving that [defendant's alleged negligence] was a substantial factor in bringing about . . . . the loss of his arm." (R. 535a).

"Now, the burden of proof in a malpractice action is upon the plaintiff, to prove either, one, that the physician or surgeon did not possess and employ the required skill and knowledge or, number two, that he did not exercise the care and judgment of a reasonable man in like circumstances." (R. 540a).

(R. 584a). As noted above, burden of proof was adequately and correctly covered in the charge given. The remainder of the requested charge simply is not the law of Pennsylvania. Expert medical opinion on causation need not be unqualified and absolute, i. e., stated in "categorical terms"; ordinarily, it must establish that the injury was, to a "reasonable degree of medical certainty," caused by the alleged negligence.

> [When] the complexities of the human body place questions as to the cause of pain or injury beyond the knowledge of the average layperson . . . the law requires that expert medical testimony be employed. In addition to its bearing on whether or not the defendant's conduct was negligent, such testimony is needed to establish that the injury in question did, with a *reasonable degree of medical certainty*, stem from the negligent act alleged.

*Bashline,* 481 Pa. at 267, 392 A.2d at 1285 (citations omitted, emphasis supplied). Accordingly, medical opinion need only demonstrate, with a reasonable degree of medical certainty, that a defendant's conduct *increased the risk* that the harm sustained by plaintiff would occur. The jury, not the medical expert, then has the duty to balance probabilities and decide whether defendant's negligence was a substantial factor in bringing about the harm. *Bashline,* 481 Pa. 256, 273, 392 A.2d 1280, 1288–89. The trial court's charge correctly defined that duty.

Appellants' medical expert testified that a prompt biopsy would have revealed the malignancy before bone invasion and, in the exercise of due care, should have been performed on a lump that was increasing in size. If the tumor had been diagnosed and removed before the bone was involved, it would not have been necessary to do any bone operation. An x–ray would show nothing, stated Dr. Corn, until the bone had been invaded, which would then be too late to avoid removal of at least part of the bone. Dr. Corn further testified that the November 1965 x–rays showed "very advanced changes" in the bone. In his opinion, x–rays would have revealed bone invasion long before he was

consulted, and if the fibrosarcoma had been removed earlier, the recurrence which necessitated the amputation would have been less likely.[11] We conclude that the expert medical testimony here constituted sufficient evidence from which the jury could have found that Dr. Inouye's negligence was a substantial factor in producing the harm.

## II

■ Appellants next claim that the Superior Court erred in holding that (1) their counsel's closing speech was improper because it suggested that the jury take into account the possibility of future metastasis in awarding damages; and (2) the trial court should have instructed the jury that no award was to be based on the possibility of later metastasis.

The disputed closing argument refers to Edwin's mental anguish arising from fear of metastasis:

> Think of the mental anguish that he has gone through. He may be 16 but he knows it's cancer. When you consider this, and we talked about it in the past, consider it in the future. Do you know the anguish that an average ordinary person must go through when the diagnosis of cancer is made? What's the next x–ray film going to show? And the next one and the next one?

(R. 522a–532a). The Superior Court concluded that the jury should have been instructed:

11. Q. Based upon those facts, [Dr. Corn] do you have an opinion whether there was a substantial possibility of survival of the arm had any other diagnosis been made?
A. I believe so.
Q. And what is that opinion?
A. I believe that if this tumor mass were discovered earlier, before it had invaded the bone, there is a much greater likelihood of it being removeable, and thereby not necessitating the need for the bone graft surgery which I had to do first, or the amputation afterwards.
Q. Doctor, based on those facts, do you have an opinion whether the failure to diagnose the tumor earlier, that is, in February or May or even October, was a substantial factor in the boy losing his arm?

       *    *    *    *    *    *

A. I believe it was.
(R. 169a).

That since there was no evidence that the defendant caused the cancer, or that his treatment increased the risk of metastasis to some other part of the body, the jury must not take into account any claim that the cancer may later be discovered to have metastasized.

(R. 568a–569a).

As discussed *supra*, appellants never claimed that Dr. Inouye's negligence *caused* the cancer. There was abundant expert testimony, however, that his negligence *increased the risk* of fibrosarcoma. If the soft tissue tumor had been biopsied and removed in a timely manner, the fibrosarcoma, i. e., the bone invasion, was less likely to have occurred. Since fibrosarcomas can metastasize–as both Dr. Corn and Dr. Inouye agreed–the possibility of metastasis would have been less if the tumor had been removed before it spread to the bone. Dr. Corn testified that Edwin's prognosis remained guarded because of the possibility of metastasis, and for this reason, annual chest x–rays had been taken since the amputation. Although the likelihood of metastasis may have lessened with time, Dr. Corn opined that Edwin should be checked for metastasis of the cancer "for many, many, many more years." (R. 190a). As we stated in *Boyle v. Pennsylvania Railroad Co.*, 403 Pa. 614, 618, 170 A.2d 865, 867 (1961), a doctor properly may be allowed to explain the possible future effects of an injury, and with less definiteness than is required of opinion testimony on causation. Consequently, it was not improper for the jury to consider the possibility of future metastasis in awarding damages.

### III

■ The Superior Court further held that the trial court erroneously refused appellee's request to instruct the jury that an award would not be subject to federal income tax. We disagree.

The law of Pennsylvania plainly is that income tax consequences should not be considered by the jury. In *Girard Trust Corn Exchange Bank v. Philadelphia Transportation Co.*, 410 Pa. 530, 538, 190 A.2d 293, 298 (1963), we noted:

> The majority rule in the United States is that in fixing damages for the determination of decedent's earning capacity, the income tax consequences of the matter should not be taken into consideration .... This, in our opinion, is based upon sound legal reasoning and is now advanced as the rule to be followed in Pennsylvania.

Income tax as it relates to damages should be mentioned neither in argument nor in jury instructions. The trial court correctly refused appellee's request.

## IV

In his appeal to the Superior Court, appellee raised two issues not addressed by that Court in its opinion: (1) the alleged excessiveness of the verdict, and (2) the alleged inappropriateness of the table and instruction on reduction of future earnings to present worth that were given to the jury.[12]

While it is true that a court can grant a new trial based on the excessiveness of the verdict, *Connolly v. Philadelphia Transportation Co.*, 420 Pa. 280, 216 A.2d 60 (1966), it may not lightly disregard the jury's award:

> The duty of assessing damages is within the province of the jury and should not be interfered with by the court, unless it clearly appears that the amount awarded resulted from caprice, prejudice, partiality, corruption or some other improper influence.

*Tonik v. Apex Garages, Inc.*, 442 Pa. 373, 378, 275 A.2d 296, 299 (1971). *See also Layman v. Doernete*, 405 Pa. 355, 175 A.2d 530 (1961).

■ The record contains ample testimony to support the jury's award as modified by the Court. Edwin, his parents, and his priest testified to the pain and suffering he had

---

12. In the interest of judicial economy and in order to avoid further delay in this already prolonged litigation, we now consider these issues, although it would be procedurally correct to remand them to the Superior Court.

endured over the years and to the humiliation he had experienced from his disfigurement and from his inability to care for himself in many ways. Dr. Saul Leshner, a psychologist and employment expert, testified that Edwin still had not accepted his handicap and that his future earning capacity would be greatly reduced because of his physical disability and the prejudice engendered thereby.[13] The record also reflects the cost of replacing and maintaining a prosthesis and the cost of annual chest x–rays. Additionally, Edwin still must bear the heavy burden of knowing that cancer may return. In light of this evidence, we cannot conclude that the award of $700,000 to Edwin and $10,00 to his parents was either capricious or excessive.

■ Appellee also claims error in the trial court's charge relating to the reduction of future earnings to present worth. He asserts that the reduction to present worth table offered as a guide to the jury was inaccurate and produced an error in appellants' favor of at least $38,304. We are not persuaded that the reduction to present worth table submitted to the jury was inappropriate.[14] Furthermore, because it was offered to the jury only as a guide, the jury was free to use it or not and to consider other factors in determining the award.[15]

The Order of the Superior Court is reversed and the Judgment of the Court of Common Pleas reinstated.

13. Dr. Leshner testified that because Edwin had low–average mental ability, he must rely on his physical competency, i. e., on the skills most affected by his handicap, for employment.

14. The table used is part of Pennsylvania Standard Jury Instructions, Civil Subcommittee Draft of October 14, 1973, § 6.20: Civil Damages–Present Worth, and has been prepared and recommended by the Civil Instruction Subcommittee of the Pennsylvania Supreme Court's Committee for Proposed Standard Jury Instructions.

15. Cf. *Kaczkowski v. Bolubasz,* 491 Pa. 561, 421 A.2d 1027 (1980) (In order to fully compensate the victim in awarding damages for lost future earnings, future inflation is presumed to offset future interest rates, and the courts of Pennsylvania are instructed to abandon the practice of discounting lost future earnings).