431 A.2d 920

**Naomi JONES and Ray Jones, her husband, Appellants,**

**v.**

**MONTEFIORE HOSPITAL, Marvin Silverblatt, Edward L. Waisbrot, Stanley A. Hirsh, Gerald I. Kaufer, Silverblatt Medical Associates, a Pennsylvania corporation, and Surgical Associates, a Pennsylvania professional association, Appellees.**

Supreme Court of Pennsylvania.

Argued October 1, 1980.

Decided July 2, 1981.

---

P. Christian Hague, Thomas A. Berret, Meyer, Unkovic & Scott, Pittsburgh, for appellants.

Charles H. Alpern, Grogan, Graffam, McGinley, Solomon & Lucchino, Pittsburgh, for Montefiore Hospital.

John W. Jordan, IV, Thomson, Rhodes & Grigsby, Pittsburgh, for Waisbrot, Hirsch, Kaufer & Surgical Associates.

William R. Tighe, Stein & Winters, Pittsburgh, for Silverblatt & Silverblatt Medical Associates.

Before O'BRIEN, C. J., and ROBERTS, NIX, LARSEN, FLAHERTY and KAUFFMAN, JJ.

OPINION

KAUFFMAN, Justice.

This is an appeal by Naomi Jones and her husband, Ray Jones, ("appellants") from an Order of the Superior Court affirming judgments in favor of appellees [1] entered by the Court of Common Pleas of Allegheny County in a medical malpractice action.[2] Because the trial court's jury charge on the issue of causation was clearly erroneous, we reverse and remand for a new trial.

In November 1973, Mrs. Jones was referred by her physician, Dr. Marvin Silverblatt, to Surgical Associates, a professional association that specializes in the diagnosis and treatment of breast cancer, for treatment of a mass in her right breast. She was examined on November 19, 1973 by Dr. Waisbrot, a member of Surgical Associates, who discovered two masses, one in the upper part and the other in the lower part of her right breast. Mrs. Jones was admitted to Montefiore Hospital for a biopsy, and on November 27, 1973, Dr. Kaufer, another member of Surgical Associates, removed material from her breast.[3] The biopsied mass proved

1. Appellees are Edward L. Waisbrot, Stanley A. Hirsh, Gerald I. Kaufer, and Surgical Associates (collectively referred to as "Surgical Associates"); and Montefiore Hospital, Marvin Silverblatt and Silverblatt Medical Associates. This appeal is limited to the action against Surgical Associates.

2. Jurisdiction is vested in this Court pursuant to the Judicial Code, Act of July 9, 1976, P.L. 586, No. 142, 42 Pa.C.S.A. § 724(a).

3. As explained at trial, when surgeons seek to locate a mass on a woman's breast, they divide the breast into quadrants and use the hands of a clock as reference points. A principal issue at trial was whether the material removed was the mass at 12:30, as Dr. Kaufer testified, or the mass at 6:30, as appellants and Lousie Rodgers, a nurse and friend of Mrs. Jones, testified.

to be benign, and she was discharged from the hospital the following day.

Mrs. Jones continued to receive treatment from Surgical Associates, and at her first post-biopsy examination on December 7, 1973, Dr. Waisbrot noted in his office records: "Still has half-by-one centimeter nodule 12 o'clock right breast. Why wasn't it removed." On December 17, 1973, Dr. Kaufer examined Mrs. Jones, but testified he could not palpate this mass. In March 1974, Dr. Waisbrot noted: "Cyst at 1:30, right breast, 4 inches from aureola. Check in one year." In April 1975, Dr. Kaufer again examined Mrs. Jones, but did not palpate this mass or perform any other tests, even though she complained that the mass had increased in size.

In August 1975, Mrs. Jones, concerned about the continuing increase in size of the mass and the pain which it was causing, asked Dr. Miles Mrvos, with whom she worked at Magee Hospital, to examine her. Because Dr. Mrvos concluded that the mass required immediate attention, Mrs. Jones again consulted Dr. Waisbrot on August 25, 1975. The mass was diagnosed as probably cancerous, and Mrs. Jones was admitted to Montefiore Hospital that day. A biopsy confirmed Dr. Waisbrot's diagnosis, and a modified radical mastectomy was performed. In addition, because the cancer by that time had metastasized to a lymph node, chemotherapy and other forms of treatment were required.

In October 1975, appellants commenced an action against Dr. Silverblatt, Silverblatt Medical Associates, Surgical Associates, and Montefiore Hospital alleging that in November 1973, they negligently had failed to remove the masses in Mrs. Jones' breast and to perform necessary post-operative tests, which failures caused Mrs. Jones to contract cancer, impairing her health, shortening her life, and causing financial loss. After trial, a directed verdict was entered in favor of Montefiore Hospital and jury verdicts were returned in favor of all the other defendants. Appellants' Motion for a New Trial was denied. Following affirmance by the Superi-

or Court[4], we granted allocatur and now reverse and remand for a new trial.

Citing *Hamil v. Bashline*, 224 Pa.Super. 407, 307 A.2d 57 (1973), appellants requested the following jury charge on causation:

14. A person who undertakes to render services to another is liable for physical harm resulting from his failure to exercise reasonable care, if that failure increased the risk of harm.

Instead of the instruction requested, the trial court charged the jury on causation as follows:

We have a system of jurisprudence based on the concept of fault, and one who is charged with responsibility for something, including doctors, are not to be found responsible for such things unless it is determined that they were caused by the negligence or negligent conduct. Negligence is generally defined as doing that which a reasonably prudent person would not do in the circumstances, or conversely, failing to do that which a reasonably prudent person would do in the circumstances, nor is negligence actionable and the basis of a claim in a vacuum, but only if it is a proximate cause of the undesired and unfortunate ensuing consequence, *and proximate cause is that cause which in direct and continuous sequence uninterrupted by any intervening cause produces the result and without which it would not occur.* (Emphasis supplied)

Appellants argue that the trial court's denial of their request, together with the inadequacy of the charge actually given, constitute error entitling them to a new trial.[5] We agree.[6]

4. *Jones v. Montefiore Hospital*, 275 Pa.Super. 422, 418 A.2d 1361 (1980).

5. Although no specific objection was made at trial to the charge given, appellants' exception to the trial court's refusal to charge as requested on causation was sufficient to put that charge before us for appellate review. *Gradel v. Inouye*, 491 Pa. 534, 540 n.6, 421 A.2d 674, 677 n.6 (1980).

6. See note 6 on page 416.

Proximate cause is a term of art, and may be established by evidence that a defendant's negligent act or failure to act was a *substantial factor* in bringing about the harm inflicted upon a plaintiff. Pennsylvania law has long recognized that this *substantial factor* need not be, as the trial court incorrectly charged, the only factor, i. e., *"that cause* which . . . produces the result." *Gradel v. Inouye,* 491 Pa. 534, 542, 421 A.2d 674, 678 (1980); *Hamil v. Bashline,* 481 Pa. at 266, 392 A.2d at 285; *Majors v. Brodhead Hotel,* 416 Pa. 265, 273, 205 A.2d 873, 878 (1965). A plaintiff need not exclude every possible explanation, and "the fact that some other cause concurs with the negligence of the defendant in producing an injury does not relieve defendant from liability unless he can show that such other cause would have produced the injury independently of his negligence." *Majors v. Brodhead Hotel,* 416 Pa. at 273, 205 A.2d at 878.

In *Hamil v. Bashline, supra,* we noted that Section 323(a) of the Restatement (Second) of Torts (1965) has long been recognized as part of the law of Pennsylvania, and then held that the effect of that section was to relax the degree of certainty ordinarily required of a plaintiff's evidence to provide a basis upon which a jury may find causation:[7]

**6.** Appellants also object to the trial judge's refusal to charge the italicized portion of the following requested point:

A physician is required to use the scientific means and facilities open to him for the collection of the best factual data to arrive at his diagnosis, *and his failure to use these means to secure an adequate factual basis for his diagnosis is not an error of judgment, but is negligence.* (R. 7a)

Since one of the issues raised at trial was whether additional diagnostic procedures would have been beneficial or injurious to Mrs. Jones, it was for the jury to decide whether failure to perform the procedure was negligent or not, and the trial court correctly limited the requested point.

**7.** Restatement (Second) of Torts § 323 (1965) provides:

§ 323. *Negligent Performance of Undertaking to Render Services*
One who undertakes, gratuitously or for consideration, to render services to another which he should recognize as necessary for the protection of the other's person or things, is subject to liability to the other for physical harm resulting from his failure to exercise reasonable care to perform his undertaking, if

> [O]nce a plaintiff has demonstrated that defendant's acts or omissions, in a situation to which Section 323(a) applies, have increased the risk of harm to another, such evidence furnishes a basis for the fact-finder *to go further* and find that such increased risk was in turn a *substantial factor in bringing about the resultant harm*; the necessary proximate case will have been made out if the jury sees fit to find cause in fact.

481 Pa. 272, 392 at 1288 (emphasis supplied). Thus, medical opinion need only demonstrate, with a reasonable degree of medical certainty, that a defendant's conduct *increased the risk* of the harm actually sustained, and the jury then must decide whether that conduct was a substantial factor in bringing about the harm. *Gradel v. Inouye*, 491 Pa. at 545, 421 A.2d at 679. Appellants contend that Section 323(a) is applicable to the facts of this case as developed at trial and, therefore, the requested charge, *supra*, was appropriate.[8]

The appellees insisted, and the Superior Court agreed, that because appellants sought to prove that appellees' failure either to remove the mass in Mrs. Jones' breast or to properly diagnose and treat a later-discovered mass *caused* the harm, they were not entitled to a Section 323(a) charge. Thus, the jury was precluded from deciding whether or not appellees' conduct increased the risk of the harm which was

> (a) his failure to exercise such care increases the risk of such harm, or
> (b) the harm is suffered because of the other's reliance upon the undertaking.

**8.** Although appellants' submission generally paraphrased Section 323(a), the specific wording requested would unduly restrict the discretion of the jury, since it instructs that once a defendant's negligence is found to have increased the risk of the harm suffered by a plaintiff, liability *must* follow. This misconstrues the function of the jury as contemplated by Section 323(a). Once the medical testimony has demonstrated, with a reasonable degree of medical certainty, that a defendant's conduct *increased the risk* that the harm sustained by a plaintiff would occur, even though it has not demonstrated that such conduct alone *caused* that harm, Section 323(a) requires the jury to decide whether or not "*to go further* and find that such increased risk was in turn a *substantial factor* in bringing about the resultant harm." *Hamil v. Bashline*, 481 Pa. at 272, 392 A.2d at 1288 (emphasis supplied).

in fact sustained, and, if so, whether or not the increased risk was a substantial factor in producing the harm. We conclude that the jury should have been instructed to impose liability if it decided that appellees' negligent conduct increased the risk of harm and that such increased risk was a substantial factor in bringing about the harm actually inflicted upon Mrs. Jones, whether or not the medical testimony as to causation was expressed in terms of certainty or probability. Undoubtedly, an unsuccessful effort to prove that appellees' conduct was the direct and only cause of harm might well have succeeded in persuading the jury that appellees' conduct *at least* increased the risk of the particular harm inflicted and was a substantial factor in bringing it about. Section 323(a) was designed to *relax* a plaintiff's burden of proving causation, not to compound it. Because it is clear that sufficient evidence was presented by both parties to raise the issue of increased risk, we conclude that appellants were entitled to a charge based on Section 323(a).

Dr. Davidson, appellants' medical expert, testified: (1) that it was unlikely that the lump for which Mrs. Jones originally sought treatment in November 1973 was cancerous at the time of the first surgery; (2) that if the mass in the upper quadrant of her breast had been removed then, it would not have become cancerous and a mastectomy would not have been necessary; (3) that even if either the mass noted by Dr. Waisbrot immediately after the first surgery or the one noted by him in March 1974 were a *new* mass, various well recognized and highly accurate diagnostic tests, including aspiration, mammography, thermography and radiography, should have been performed; (4) that even if the cancerous mass were a new one, if it had been diagnosed and removed earlier, the cancer probably would not have metastasized, or spread to a lymph node; (5) that failure to remove the cancer prior to its spread had cut Mrs. Jones' life expectancy in half and necessitated chemotherapy and other treatment. Appellees' witness, Dr. Hubbard of Montefiore Hospital, testified that prognosis after metastasis to a lymph

node is not as favorable as if metastasis had not occurred. From this evidence, the jury might well have concluded that the failure either to remove the original mass or to properly test and treat a new mass prevented early detection and thereby increased the risk of mastectomy or, at the very least, increased the risk that cancer would metastasize.

In response to the appellants' claims, appellees argued: (1) that since the mass discovered in 1973 had been removed, further tests were not appropriate; (2) that Mrs. Jones was already suffering from cancer and that nothing Surgical Associates did or failed to do had adversely affected her condition. On direct examination, Surgical Associates' expert witness, Dr. Fisher, when questioned in this regard, clearly responded to the issue of increased risk:

Q. Now, Doctor, from your review of this record, can you give us any idea as to the length of time this cancer was in existence in the body of Naomi Jones either detected or undetected.

A. ... We can say that this has certainly been present longer than three years in some form or another.

Q. Now if this cancer had been detectable in 1973, what surgical procedure would have been carried out?

A. The same.

Q. *Do you believe that any act by any of the Defendants in any way increased any risk to Naomi Jones?*

A. *No, I did not see anything in the records that would suggest to me there was anything that the physicians taking care of Naomi Jones did which would jeopardize her eventual outlook with her disease.*

(R. 470a–471a, emphasis supplied). This defense is indistinguishable from that in *Hamil v. Bashline, supra,* where the defendants contended that their patient was already suffering from a heart condition from which he would not have survived regardless of their efforts or lack thereof. 481 Pa. at 263, 392 A.2d at 1283.

In *Gradel v. Inouye, supra,* we held Section 323(a) to be applicable to facts very similar to those presented here. In *Gradel,* a doctor who failed to employ certain diagnostic procedures in treating the lump on a young boy's arm was found liable for increasing the risk that bone cancer would necessitate the resulting amputation of the boy's arm. It was never shown that the doctor's negligence directly *caused* either the cancer or the amputation, or that the amputation clearly would not have been necessary had the tests been performed. Nevertheless, we held that testimony that the doctor's failure to diagnose the tumor earlier *increased the likelihood* of the amputation was sufficient to warrant a charge based on Section 323(a) and, thus, to enable the jury to find that the doctor's alleged negligence was a substantial factor in bringing about the harm.

We conclude that the instruction on causation given by the trial judge was clearly erroneous, and that appellants were entitled to a Section 323(a) instruction. As we said in *Vaughn v. Philadelphia Transportation Co.,* 417 Pa. 464, 468, 209 A.2d 279, 282 (1965):

> In determining whether fundamentally erroneous instructions require the grant of a new trial, whether such instructions did or did not bring about the complained of verdict is not the question. If it appears that such instructions *might* have been responsible for the verdict, a new trial is mandatory: *Reisberg v. Pittsburgh & Lake Erie R.R.,* 407 Pa. 434, 180 A.2d 575 (1962). (Emphasis supplied).

Since the jury might have reached its decision as a result of the incomplete and erroneous instructions on causation, a new trial is required.

Accordingly, the order of the Superior Court is vacated and the case is remanded to the Court of Common Pleas for a new trial.