Robert ZIEBER and Sabine Kelischek, M.D., H/W, Appellees,

v.

Arthur BOGERT, D.O.; and T. Bear G.P. Ltd., Trading as Roxborough Family Practice, Appellants (at 1828).

Robert Zieber and Sabine Kelischek, M.D., H/W, Appellees,

v.

Stephen Belfiglio, T. Bear, G.P. Ltd. d/b/a Roxborough Family Practice, Arthur Bogert, Roxborough Memorial Hospital, Appeal of T. Bear, G.P. Ltd. d/b/a Roxborough Family Practice, Appellants (at 1831).

Superior Court of Pennsylvania.

Argued March 9, 1999.

Filed Jan. 31, 2000.

Reargument Denied April 3, 2000.

Lawrence E. Currier, Philadelphia, for T.Bear G.P. Ltd.

Allan H. Starr, Philadelphia, for Arthur Bogert, D.O.

Andrew J. Stern, Philadelphia, for Robert Zieber & Sabine Kelischek, M.D.

Before KELLY, LALLY–GREEN and BROSKY, JJ.

KELLY, J.:

¶ 1 In this appeal, we must determine whether the trial court erred in failing to instruct the jury on comparative negligence where the only evidence of comparative negligence on the part of Appellee, Robert Zieber, was the testimony of the opposing party that Zieber ignored the doctor's recommendation that Zieber undergo a particular diagnostic test. We are also asked to decide whether it was error to allow the jury to consider Zieber's risk of recurrence of cancer as part of the damages. Consistent with established Pennsylvania law, we hold that the trial court must instruct the jury on comparative negligence where there is any evidence of comparative negligence on the part of the plaintiff. We further hold that the trial court properly allowed the jury to hear and consider testimony on the probability of a recurrence of Zieber's cancer, as part of the jury's assessment of damages. For the following reasons, however, we are constrained to reverse and remand for a new trial.

¶ 2 This appeal comes to us from the judgment entered May 1, 1998, by the Court of Common Pleas, Philadelphia County, in favor of Appellees, Robert Zieber and his spouse, Sabine Kelischek, in the amounts of $800,000 for Zieber and $200,000 for Kelischeck. The relevant facts and procedural background in this case are as follows. Late in the evening on June 6, 1992, Appellee Robert Zieber, age thirty-three, experienced severe abdominal pain such that he could not stand up straight. His wife, Appellee Sabine Kelischek, who was at that time a resident in obstetrics and gynecology at Thomas Jefferson Hospital, palpated his belly and felt what appeared to be a mass of approximately four centimeters. Zieber telephoned his primary care physician, Dr. Arthur Bogert,[1] who authorized him to go to the emergency room of Roxborough Memorial Hospital. There, an emergency room physician examined Zieber. The physician requested a surgical consultation. Some time later, in the early morning of hours of June 7, 1992, Zieber was examined by Dr. J. Norris Childs, who felt something in Zieber's belly, ordered blood drawn, and instructed Zieber to return the next day. On the following day, Zieber returned to the hospital to see Dr. Childs. Zieber appeared to look and feel better. However, Dr. Childs still could feel a mass in Zieber's abdomen. Dr. Childs contacted Zieber's primary care physician, Dr. Bogert, and recommended that he order a C–T scan with intravenous ("IV") contrast, a barium enema and an upper GI study. Dr. Bogert assured Dr. Childs that he would follow through with the recommendation.

¶ 3 On June 8, 1992, Zieber telephoned Dr. Bogert's office at Roxborough Family Practice. On June 11, 1992, Dr. Bogert examined Zieber. Upon examination, Dr. Bogert felt a mass in Zieber's abdomen. Dr. Bogert preliminarily diagnosed Zieber's problem as irritable bowel syndrome. Dr. Bogert ordered the barium enema and the upper G.I. that Dr. Childs had recommended. However, he did not order the

1. Dr. Bogert was an employee of T. Bear G.P. Ltd. d/b/a/ Roxborough Family Practice.

C–T scan that Dr. Childs had also recommended. After the barium enema and the upper G.I. were performed, Zieber made a follow-up appointment with Dr. Bogert. During the appointment on July 6, 1992, Dr. Bogert told Zieber that the studies had confirmed his diagnosis of irritable bowel syndrome. Dr. Bogert instructed Zieber that he should return to the office if he had another episode of severe pain, but that irritable bowel syndrome is a chronic problem usually managed by dietary adjustments. Zieber did not experience another episode of severe pain and therefore did not return to Dr. Bogert's office.

¶ 4 In early March 1993, Zieber experienced flu-like symptoms, including abdominal pain and headache. Because he had switched health insurance plans, Zieber made an appointment with a participating provider of his new plan, Dr. Joan Lit. Dr. Lit examined Zieber and felt the mass in his lower abdomen. She discussed ordering a C–T scan, but asked Zieber to return to her office in one week for another examination to see if the mass had changed. A week later, Zieber still had abdominal cramping. Dr. Lit found the mass unchanged. As a result, Dr. Lit ordered a C–T scan with IV contrast. The scan revealed a large soft tissue mass, suggesting a lymphoma of the small bowel, and numerous enlarged lymph nodes.

¶ 5 Zieber underwent surgery to confirm the diagnosis and determine the scope of the tumor. The surgery confirmed that Zieber had a large cell lymphoma and revealed that there were actually two masses in his abdomen. The larger tumor was 11 centimeters, the smaller was 6 centimeters. There was significant extra-nodal involvement. One of the tumors had invaded the bowel wall and had created an obstruction.

¶ 6 Zieber was required to undergo the surgical removal of the two masses and also large sections of his colon and small and large intestines. Following surgery, Zieber endured the recommended course of chemotherapy, one so aggressive that he developed a hernia, which had to be surgically repaired due to his violent, uncontrollable vomiting. He also developed nerve damage, resulting in permanent leg weakness and loss of sensitivity in his lower extremities. For most of the six-week long treatment, Zieber had been confined to bed. He eventually became so weak that he had to be hospitalized. By September of 1993, Zieber's chemotherapy had to be discontinued because of the life threatening side effects. He was placed on a less aggressive type of chemotherapy, but still suffered tingling and numbness in his fingers and a permanent weakness and loss of sensitivity in his feet and legs.

¶ 7 On May 8, 1995, Zieber and his wife filed a civil action complaint, alleging medical malpractice and naming as defendants Dr. Bogert and T. Bear G.P. Ltd. d/b/a/ Roxborough Family Practice ("Appellants"). The jury was selected on May 30, 1997. Trial proceeded from June 2, 1997 through June 6, 1997. After careful deliberation, the jury awarded Zieber $800,-000.00 and his wife $200,000.00 on her lost consortium claim. On June 16, 1997, Appellants filed a motion for post-trial relief. The trial court denied the motion by order dated April 13, 1998. Thereafter, the trial court molded the jury's verdict pursuant to Pa.R.C.P. 238 and judgment was entered in the amount of $1,095,545.20 against Appellants, jointly and severally. This timely appeal followed.

¶ 8 On appeal, Appellants present the following questions for our review:

DID THE TRIAL COURT ERR AND/OR ABUSE ITS DISCRETION IN FAILING TO GRANT [APPELLANTS'] MOTION FOR A NEW TRIAL BASED ON ITS FAILURE TO CHARGE THE JURY ON [APPELLEES' COMPARATIVE] NEGLIGENCE?

DID THE TRIAL COURT ERR AND/OR ABUSE ITS DISCRETION IN FAILING TO GRANT [APPELLANTS'] MOTION FOR A NEW TRI-

AL RELATING TO [APPELLEES'] CLAIMS OF INCREASED RISK AND FEAR OF RECURRENCE OF CANCER?

DID THE TRIAL COURT ERR IN ENTERING JUDGMENT AGAINST BOTH [APPELLANTS] JOINTLY AND SEVERALLY?

(Appellants' Brief at 4).

¶ 9 In their first issue, Appellants assert that the trial court erred and abused its discretion when it refused to charge the jury on Zieber's comparative negligence. Appellants argue that it was incumbent upon the trial court to instruct the jury as requested, because there was more than sufficient evidence presented at trial to warrant such a charge. Appellants conclude that the court's failure to charge the jury on Zieber's comparative negligence mandates the grant of a new trial. We must agree.

¶ 10 The standard for determining whether a jury instruction on comparative negligence is warranted under Pennsylvania law is well settled. The burden of establishing comparative negligence rests on the defendant. *Pascal v. Carter*, 436 Pa.Super. 40, 647 A.2d 231, 233 (1994) (citing *McCullough v. Monroeville Home Ass'n, Post 820, Inc.*, 270 Pa.Super. 428, 411 A.2d 794, 795 (1979)). "[I]f there is some evidence of [comparative] negligence produced in *any* of the evidence, it is reversible error not to charge the jury on the issue, when requested to do so by the defendant." *Id.* (citing *Matteo v. Sharon Hill Lanes, Inc.*, 216 Pa.Super. 188, 263 A.2d 910 (1970)). *See, e.g., Rizzo v. Michener*, 401 Pa.Super. 47, 584 A.2d 973 (1990), *appeal denied*, 528 Pa. 613, 596 A.2d 159 (1991) (citing *Levine v. Rosen*, 394 Pa.Super. 178, 575 A.2d 579 (1990), *affirmed*, 532 Pa. 512, 616 A.2d 623 (1992)); *Binder v. Jones & Laughlin Steel Corp.*, 360 Pa.Super. 390, 520 A.2d 863 (1987), *appeal denied*, 516 Pa. 631, 533 A.2d 90 (1987); *Speer v. Barry*, 349 Pa.Super. 365, 503 A.2d 409, 412 (1985), *appeal denied*, 514 Pa. 623, 522 A.2d 49 (1987). In addition, a plaintiff's negligent conduct must be a proximate cause of his injury if his conduct is to affect his recovery. *Pascal, supra* (citing *Koelle v. Philadelphia Electric Co.*, 443 Pa. 35, 277 A.2d 350 (1971)). For negligent conduct to be a proximate cause of an injury, it must be a substantial factual cause of the injury for which damages are sought. *Pascal, supra* (citing *Dornon v. Johnston*, 421 Pa. 58, 60, 218 A.2d 808, 809 (1966)).

¶ 11 In the instant case, Zieber provided evidence that Dr. Bogert, Zieber's primary care physician, (1) ignored Dr. Child's recommendation to order a C–T scan; (2) failed to recommend to Zieber that he have a C–T scan performed; and, (3) refused to order the scan for Zieber. Appellees further testified that Dr. Bogert told Zieber that (1) he had irritable bowel syndrome; (2) it was a chronic condition managed through dietary adjustment and periodic doses of bentyl; and, (3) Zieber should return to Roxborough Family Practice only if his symptoms returned with the ferocity that he had experienced in June of 1992.

¶ 12 In contrast, Appellants presented testimonial evidence that Dr. Bogert did in fact recommend three tests to Zieber; namely, an upper G. I., a barium enema, and a C–T scan with IV contrast. (N.T. Trial, 6/4/97, at 416). Dr. Bogert stated that Zieber agreed to have the two barium tests performed, but adamantly refused to follow Dr. Bogert's recommendation as to the C–T scan with IV contrast. (*Id.* at 422–23, 428). Dr. Bogert stated that Zieber had expressed concern about the possibility of an allergic reaction to the contrast material. Further, Dr. Bogert related that he instructed Zieber to return to the doctor's office as needed. (*Id.* at 440).

¶ 13 Thus, the evidence of Zieber's comparative negligence was the testimony of Dr. Bogert that he had recommended the C–T scan and that Zieber had refused to undergo the test. Because even minimal evidence of comparative negligence re-

quires a charge on the issue when requested, and Appellants had requested such an instruction, we hold that the trial court should have given an appropriate jury instruction on comparative negligence and that its failure to do so is reversible error. *See Pascal, supra*; *McCullough, supra.* Accordingly, we are constrained to reverse and remand for a new trial.

¶ 14 In their second issue, Appellants assert that the trial court erred when it allowed the jury to hear testimony on Zieber's probable recurrence of the cancer. Appellants argue that settled Pennsylvania law does not recognize "fear of cancer" claims. According to Appellants, Pennsylvania law precluded the jury's consideration of Zieber's risk of a recurrence of his cancer. Therefore, Appellants conclude, the trial court erred when it allowed the jury to consider Zieber's increased risk of recurrence as part of the damages issue. We disagree.

¶ 15 In *Gradel v. Inouye*, 491 Pa. 534, 421 A.2d 674 (1980), our Supreme Court addressed a similar issue. The plaintiffs in *Gradel* filed an action in trespass for medical malpractice on behalf of a young boy, who had developed bone cancer sometime in 1965 at the point of a fractured bone in his left arm. The cancer later necessitated the amputation of his left arm above the elbow. The plaintiffs claimed that the doctor's failure to biopsy and remove a soft-tissue tumor in a timely manner increased the likelihood of occurrence of the fibrosarcoma. The Supreme Court held that plaintiffs could present testimony to explain the future effects of the negligent treatment and that it "was not improper for the jury to consider the possibility of future metastasis in awarding damages." *Id.* at 546, 421 A.2d at 680.

¶ 16 In the instant case, Zieber claimed that Dr. Bogert misdiagnosed and mistreated Zieber's condition. He claimed that Dr. Bogert's negligent failure to diagnose Zieber's cancer in June, 1992, allowed critical time to pass and the cancer to spread, thereby increasing the spread of the cancer and the probability that Zieber will suffer a recurrence.

¶ 17 We agree with Appellants that fear of and/or increased risk of a disease, such as cancer, is not a cognizable claim where the party seeking recovery has not yet contracted the disease. *See Klein v. Weisberg, et al.*, 694 A.2d 644 (Pa.Super.1997), *appeal denied*, 555 Pa. 731, 725 A.2d 182 (1998) (dismissing plaintiff's claims that delay in diagnosis of his liver condition put him at increased risk for liver cancer). This case, however, is not a typical "fear of contracting a disease" case. Here, Zieber already has an invasive and aggressive form of cancer. Thus, testimony on the probability or likelihood of metastasis of the cancer is not so speculative as to preclude a jury from considering it as part of the future effects of the disease Zieber already has. *See Gradel, supra.* Therefore, this evidence should be permitted on retrial.

¶ 18 In their third issue, Appellants contend that the trial court erred when it entered an order molding the jury's verdict to include T. Bear G.P. Ltd. d/b/a Roxborough Family Practice as jointly and severally liable with Dr. Bogert. On August 6, 1999, the parties filed a stipulation and agreement with this Court that the order entering judgment against Appellants jointly and severally would be modified to reflect that judgment has been entered in favor of Appellees and against Arthur Bogert, D.O. and T. Bear G.P. Ltd. d/b/a Roxborough Family Practice and that Appellees' claims against T. Bear G.P. Ltd. d/b/a Roxborough Family Practice are based upon vicarious liability. Thus, Appellant's third issue is now moot.

¶ 19 Based upon the foregoing, we hold that consistent with established Pennsylvania law, Appellants were entitled to an appropriate jury instruction on the comparative negligence of Zieber because there was some evidence of comparative negligence to warrant the instruction. We also hold that evidence of the future effects

of a disease already contracted, such as the probability of metastasis, is a proper consideration for the jury when awarding damages. Accordingly, we vacate the judgment entered and remand this case to the trial court for further proceedings consistent with this opinion.

¶ 20 Judgment vacated; case remanded for further proceedings; jurisdiction is relinquished.