Barbara FETHEROLF and Mark
Fetherolf, h/w, Appellants,

v.

Michael H. TOROSIAN, M.D., Susan B.
Orel, M.D., and Hospital of the Univer-
sity of Pennsylvania, Appellees.

Superior Court of Pennsylvania.

Argued March 22, 2000.

Filed Aug. 30, 2000.

Joseph A. Cullen, Doylestown, for appellant.

Charles A. Fitzpatrick, Philadelphia, for appellee.

BEFORE: POPOVICH, TODD, and BROSKY, JJ.

TODD, J.:

¶ 1 In this medical malpractice action, Mark and Barbara Fetherolf appeal from the judgment entered upon a directed verdict in favor of Appellees Michael H. Torosian, M.D., Susan B. Orel, M.D. and the Hospital of the University of Pennsylvania.[1] Appellants argue that the trial court erred in directing the verdict because Appellants introduced sufficient evidence that Appellees deviated from the accepted standard of care and that Appellants suffered compensable damages. For the reasons that follow, we affirm in part, reverse in part and remand this matter for retrial.

¶ 2 The relevant facts, derived from the certified record and from the trial court's opinion denying Appellants' post-trial motions, are as follows: In June 1994, Fetherolf[2] asked her gynecologist to examine a small lump in the lower right area of her right breast. After examining the lump, the gynecologist advised Fetherolf to contact a surgeon for further evaluation. The same month, Fetherolf first consulted with Deborah Rosa, M.D., a surgeon, who performed a mammogram and an ultrasound. The mammogram was negative. The ultrasound showed the lump, but the image did not clearly show whether it was located in breast tissue. Dr. Rosa scheduled a biopsy to determine whether the lump was cancerous, but Fetherolf canceled it and chose to consult with a different surgeon.

¶ 3 In July 1994, Fetherolf consulted with Appellee Dr. Torosian, a breast surgeon. During her visit with Dr. Torosian, Appellee Dr. Orel, a radiologist, performed a second mammogram and ultrasound. Again, the results of the mammogram were negative while the ultrasound revealed a 1.6 cm lump of uncertain location. Neither Dr. Torosian nor Dr. Orel was able to determine the precise location of the lump and Dr. Orel ordered an MRI for further diagnosis. The MRI, taken in late July, revealed no abnormality of Fetherolf's right breast.

¶ 4 Since breast images may vary during different phases of a woman's menstrual cycle, Dr. Orel scheduled a second MRI for August 1994. The second MRI again did not show a lump in the lower part of her right breast, but did reveal tissue changes in the center area of the breast. In order to monitor these changes, Dr. Torosian advised Fetherolf to undergo another MRI in January 1995.

¶ 5 The January 1995 MRI showed continued tissue changes in the central area of the breast as well as a mass in the lower area of the breast. On the basis of these tests, Dr. Torosian scheduled a biopsy for the center area of the breast in February 1995. Although the pre-admission examination for the biopsy noted the presence of a 2 cm by 1 cm lump in the lower area of the breast, only the center of the breast was biopsied. The biopsy revealed early stage cancer in the center area of Fethe-

1. Appellants initially appealed from the denial of their post-trial motions prior to having judgment entered on the verdict. Such an appeal would be interlocutory absent final judgment and this Court would be without jurisdiction to hear it. *See Johnston the Florist, Inc. v. TEDCO Construction Corp.*, 441 Pa.Super. 281, 657 A.2d 511, 514 (1995). Appellants entered final judgment on October 22, 1999. Since entry of final judgment during the pendency of an appeal is sufficient to perfect our jurisdiction, *see id.* at 513, we will address the appeal on its merits and have corrected the caption accordingly.

2. For purposes of editorial efficiency, we will refer hereafter to "Fetherolf" in referring only to Barbara Fetherolf as Mark Fetherolf's claims are purely derivative.

rolf's right breast and Dr. Torosian scheduled a follow-up appointment to monitor Fetherolf's condition.

¶ 6 A second pre-admission examination performed in April 1995 identified a 2.5 cm lump in the lower portion of Fetherolf's right breast. A subsequent MRI and biopsy of the lump in May 1995 identified it as stage II–B breast cancer. In June 1995, Fetherolf contacted a third surgeon, Susan M. Love, M.D. to remove the lump.

¶ 7 Appellants instituted this action in the Court of Common Pleas of Philadelphia County in July 1996, claiming, *inter alia,* that Drs. Torosian and Orel deviated from the standard of care in diagnosing her breast cancer and that the nine-month delay in diagnosis allowed the cancer to progress from Stage II–A to Stage II–B. Appellants' expert witness opined that had the lump been diagnosed in July 1994, the cancer would have been Stage II–A and that the curability rate for this stage of breast cancer after ten years would have been 65% in contrast to the 40% ten-year curability rate for Stage II–B breast cancer.

¶ 8 This matter was tried to a jury. At the close of evidence, the Honorable Carolyn E. Temin granted Appellees' motion for a directed verdict. The present appeal followed the trial court's denial of Appellants' post-trial motions seeking a new trial. Appellants present two issues on appeal: [3]

1. Whether Appellants introduced sufficient evidence of Appellee Dr. Orel's negligence to warrant submission of the issue to the jury; and,
2. Whether Appellants proved that Fetherolf suffered compensable damages.

(Appellants' Brief at 3.)

¶ 9 In reviewing the trial court's grant of a motion for a directed verdict,

"our scope of review is limited to determining whether the trial court abused its discretion or committed an error of law that controlled the outcome of the case." *Lear, Inc. v. Eddy,* 749 A.2d 971, 973 (Pa.Super.2000) (citations omitted). It is clear, therefore, that "[a] directed verdict may be granted only where the facts are clear and there is no room for doubt." *Id.* (citations omitted). Moreover, "[i]n deciding whether to grant a motion for a directed verdict, the trial court must consider the facts in the light most favorable to the nonmoving party and must accept as true all evidence which supports that party's contention and reject all adverse testimony." *Id.* (citations omitted).

¶ 10 The first issue raised by Appellants is whether their case against Dr. Orel should have been submitted to the jury. In order to recover on a medical malpractice claim, Appellants must prove that:

(1) the physician owed a duty to the patient; (2) the physician breached that duty; (3) the breach of duty was the proximate cause of, or a substantial factor in, bringing about the harm suffered by the patient[;] and (4) the damages suffered by the patient were a direct result of that harm.

*Eaddy v. Hamaty,* 694 A.2d 639, 642 (Pa.Super.1997). In addition, to recover, Appellants "must offer an expert witness who will testify 'to a reasonable degree of medical certainty, that the acts of the physician deviated from good and acceptable medical standards, and that such deviation was the proximate cause of the harm suffered.'" *Id.* (citation omitted.) Finally, it is well-settled that proximate cause must "be determined by the judge, and it must be established before the question of actual cause may be put to the jury." *See*

---

**3.** We have paraphrased Appellants' allegations of error for ease of reference. We note as well that the Reproduced Record submitted by Appellants consisted of only three pages of the transcript of the videotaped trial

deposition of their expert, Steven C. Cohen, M.D. We direct Appellants' counsel's attention to Rule 2152 of the Pennsylvania Rules of Appellate Procedure regarding the proper contents of the reproduced record on appeal.

*Reilly v. Tiergarten Inc.*, 430 Pa.Super. 10, 633 A.2d 208, 210 (1993).

¶ 11 Judge Temin did not address this issue substantively in her Opinion, which was based on the issue of whether Appellants had proven compensable damages.[4] In ruling on the motion for a directed verdict, however, Judge Temin did state that "the only evidence of Doctor Orel's participation is evidence that the jury could find that she discussed this with Dr. Torosian...." (N.T. Trial, 2/22/99, at 58–59.) Judge Temin further rejected Appellants' argument that Drs. Orel and Temain "were working in concert together" with regard to making recommendations regarding Fetherolf's treatment absent qualified expert testimony to that effect. We agree.

¶ 12 Appellants argue that the evidence adduced at trial via the testimony of their experts was that Dr. Orel "breached her duty by performing an MRI, instead of a fine needle aspiration, a core biopsy or an excisional biopsy" and that that "breach was a substantial factor, in bringing about the harm suffered by the patient." (Appellants' Brief at 16.) Appellants' counsel admitted during argument on the motion for a directed verdict, however, that there had been no evidence at trial that Dr. Orel was the physician who was to have determined whether Fetherolf would have a biopsy. (N.T. Trial, 2/22/99, at 58.) The complete trial record bears this out. Indeed, Appellants' own expert witness, I. Michael Leitman, M.D., who was qualified as an expert in surgical oncology, conceded that Dr. Torosian was the physician responsible for making the ultimate decision as to the course of treatment to recommend to Fetherolf. (N.T. Trial, 2/17/99, at 38, 93–94.) This is consistent with the uncontradicted opinion of Appellees' expert witness, Stephen A. Feig, M.D., a radiologist who was qualified as an expert in breast imaging, that "[t]he radiologist's job is really to report the findings, only, on the x-rays and other imaging studies. The

final decision as to whether to do a biopsy is up to the surgeon." (N.T. Trial, 2/22/99, at 18.)

¶ 13 Appellants did not meet their burden of proving that Dr. Orel breached her duty of care to Mrs. Fetherolf. Accordingly, we hold that the trial court properly granted a directed verdict to Appellee Susan B. Orel, M.D. and we affirm the judgment in her favor.

¶ 14 The second issue raised by Appellants is whether they have proven compensable damages. Specifically, Appellants argue that "Fetherolf suffered a spread of cancer into additional lymph nodes, which increased the tumor staging from 2A to 2B; decreased her curability by twenty-five (25) percent; and increased the probability of future metastasis." (Appellants' Brief at 16.) The learned trial court, appropriately relying on prior decisions of this Court, held that "[f]or damages resulting from a delay in diagnosis to be compensable, the actual harm caused by the delay must occur. In this case, there must be an actual recurrence of the cancer before the delay in diagnosis can be found compensable." (Trial Court Opinion, 7/16/99, at 4 (citations omitted).)

¶ 15 Subsequent to the trial court's consideration of this matter, however, this Court released its opinion in *Zieber v. Bogert*, 747 A.2d 905 (Pa.Super.2000), *petition for reargument denied* (Pa.Super. April 3, 2000), *petition for allowance of appeal filed* (Pa. May 4, 2000) (269 EAL 2000). In *Zieber*, plaintiff sought damages related to a ten-month delay in the diagnosis of cancer of the bowel. *Id.* At trial, the jury heard "testimony on Zeiber's probable recurrence of the cancer", despite the fact that the cancer apparently had not recurred as of the time of the trial. *Id.* at 909.

¶ 16 On appeal, this Court was asked to determine, *inter alia*, whether "the trial court properly allowed the jury to hear

4. This issue is discussed fully below.

and consider testimony on the probability of a recurrence of Zeiber's cancer, as part of the jury's assessment of damages." *Id.* at 906. This Court distinguished prior cases that held that there could be no recovery for "fear of and/or increased risk of a disease ... where the party seeking recovery has not yet contracted the disease", stating that:

> This case, however, is not a typical "fear of contracting a disease" case. Here, Zeiber already has an invasive and aggressive form of cancer. Thus, testimony on the probability or likelihood of metastasis of the cancer is not so speculative as to preclude a jury from considering it as part of the future effects of the disease Zeiber already has.

*Id.* at 909. Accordingly, after reversing and remanding for a new trial on other grounds, we held in *Zieber* that such evidence should be permitted on retrial. *Id.*

¶ 17 As with the plaintiff in *Zieber*, Fetherolf already has been treated for cancer, in this case, for breast cancer. Thus, this Court's holding in *Zieber* compels us to reverse the entry of a directed verdict in favor of Appellees Torosian and Hospital of the University of Pennsylvania and remand this matter for a new trial. On retrial, if Appellants prove their *prima facie* case of medical malpractice, they must be permitted to introduce the testimony of a properly qualified expert regarding Fetherolf's increased risk of and probability of future metastasis.

¶ 18 Affirmed in part, reversed in part and remanded with instructions. Jurisdiction relinquished.