664 A.2d 989

**Lee E. FERGUSON, Appellant,**

**v.**

**Marius H. PANZARELLA and Geisinger Medical Group.**

**Lee E. FERGUSON**

**v.**

**Marius H. PANZARELLA, M.D. and Geisinger Medical Group.**

**Appeal of Marius H. PANZARELLA, M.D., ("Dr. Panzarella") and Geisinger Clinic t/d/b/a Geisinger Medical Group– Wyoming County.**

Superior Court of Pennsylvania.

Argued May 9, 1995.

Filed Aug. 10, 1995.

Reargument Denied Oct. 13, 1995.

24

Patricia Corbett, Scranton, for appellant.

Richard C. Seneca, Harrisburg, for appellees.

Before CAVANAUGH, McEWEN and TAMILIA, JJ.

TAMILIA, Judge:

The parties in this medical malpractice action present cross-appeals from the June 17, 1994 Order granting defendants' motion for a new trial and denying their motions for judgment n.o.v. and remittitur. The trial court granted a new trial on the basis that it had improperly refused to direct a verdict in favor of defendants as to plaintiff's third claim, alleging negligent post-operative care.

The evidence educed at trial reveals that plaintiff, Lee E. Ferguson (plaintiff), sustained a knee injury and was treated by defendants, Marius H. Panzarella, M.D., and Geisinger Medical Group (defendants). Plaintiff subsequently brought this action against defendants alleging negligence in 1) failing to properly align his patella during surgery, 2) failing to discover and repair interior knee damage and 3) failure to insure proper patella alignment during follow-up visits. Defendants raised in defense the failure of plaintiff to attend numerous post-operative appointments. Following the presentation of evidence, the jury was instructed that they could consider the alleged contributory negligence of plaintiff in

relation to his claim of negligent after-care only and not in relation to the two other claims. However, the jury was not asked to make specific findings as to each of the three issues of liability. Rather, the verdict questionnaire asked only, "Was [Panzarella] negligent?" The jury returned a verdict finding both parties negligent and apportioning sixty per cent (60%) liability to defendant-Panzarella and forty per cent (40%) liability to plaintiff. The gross verdict of $243,526.51 was then molded to $146,115.91 to reflect the apportionment of liability. Following timely post-trial motions, the trial court granted defendants a new trial on the basis that the jury was improperly permitted to consider the negligence of Panzarella in rendering post-operative care to plaintiff. Specifically, the trial court relied on *Gentile v. Devirgilis*, 290 Pa. 50, 138 A. 540 (1927), for its conclusion that a physician cannot be held liable for failure to provide proper post-operative care where the patient fails to cooperate in post-operative treatment. Thus, reasoned the trial court, a directed verdict should have been granted for defendants as to plaintiff's third claim.

■ Appellate review of a trial court's decision to grant or deny a new trial is subject to an abuse of discretion standard. *Chiaverini v. Sewickley Valley Hospital*, 409 Pa.Super. 630, 598 A.2d 1021 (1991). The power to grant a new trial lies inherently with the trial court and we will not reverse its decision absent a clear abuse of discretion or an error of law which controlled the outcome of the case. *Spang & Co. v. U.S. Steel Corp.*, 519 Pa. 14, 545 A.2d 861 (1988).

■ On appeal, plaintiff initially asserts the trial court erred in granting a new trial because defendants did not preserve their claim that plaintiff was barred from recovering for negligent post-operative care by his failure to attend follow-up visits. At the close of plaintiff's case, defendants moved for a compulsory nonsuit on the basis that plaintiff failed to cooperate in post-operative care. They also submitted points for charge requesting an instruction in the nature of a directed verdict on the same issue. Further, the *Gentile* issue was raised and briefed in post-trial motions and plaintiff

responded with a thorough discussion of *Gentile*. Therefore, because the issue was raised at trial and in post-trial filings, we agree with the trial court that it was properly preserved. *See* Pa.R.C.P. 227.1.

The main point of contention between the parties concerns the impact of the Comparative Negligence Act on the case relied on by the trial court in granting a new trial, *Gentile, supra*. Specifically, plaintiff claims that, "[i]nasmuch as the Trial Court's Decision with respect to the granting of a new trial was based solely upon its reliance on the *Gentile* case, the *Gentile* case being superseded by the Comparative Negligence Act, it follows that the granting of a new trial by the Trial Court, based upon the *Gentile* Decision should be reversed." (Appellant/cross-appellee's brief at 22.) Defendants counter that "*Gentile* was not superseded by the Comparative Negligence Act because Ferguson's conduct is not evidence of contributory negligence. Rather [*Gentile*] precludes his recovery for negligent after-care because the fact-finder cannot determine, as a matter of law, whether the physician made an error in medical judgment." (Appellee/cross-appellant's brief at 22.)

In *Gentile*, the plaintiff-patient consulted with the defendant/dentist following continued pain in her lower jaw. The defendant attempted to extract a tooth, which broke, leaving a portion remaining in the plaintiff's mouth. This apparently was not an uncommon occurrence and the defendant instructed plaintiff to return the next day for further treatment. Instead, plaintiff returned four days later, at which time the condition of her jaw had seriously deteriorated. Plaintiff sued defendant for malpractice and the trial court gave the jury binding instructions in defendants' favor. The Supreme Court affirmed, finding that defendants' negligence could not be established because the plaintiff had failed to cooperate in her after-care. In rejecting plaintiff's argument that the issue of her negligence was for the jury, the court held, "[i]f [plaintiff had cooperated in her after-care], for anything that appears, her trouble might have been completely alleviated and no further evil consequences might have happened to her. . . .

Her failure to act upon defendant's advice, and to return to him at the time he directed, may have been the reason for all plaintiff's subsequent illness and distress." *Gentile, supra* at 54, 138 A. at 541. Thus, as enunciated by the *Gentile* Court, the problem that arises when a patient fails to substantially comply with a physician's post-operative instructions is that neither the court nor the jury can determine whether the physician's after-care was negligent and, even assuming negligence, whether that negligence, or the plaintiff's neglect, caused the deteriorated condition. The instant action also demonstrates this problem.

As noted, the basis of plaintiff's claim of negligent after-care was that Dr. Panzarella had failed to diagnose and treat the post-operative lateral tracking of his patella. However, the record indicates that plaintiff missed numerous post-operative appointments and waited at least two months to revisit defendants on at least three occasions. Dr. Panzarella's uncontradicted testimony as to the impact of this neglect was as follows:

[S]o basically the importance of seeing somebody regularly is that you can assess the affect of your particular treatment and you're confounded if you can't do that because you're like starting fresh again.

(N.T., 1/28/94, p. 25.) The record also indicates that plaintiff refused, at various times, to take physical therapy and his medication.

It is clear that plaintiff's substantial failure to cooperate in his post-operative care effectively precluded the defendants' assessment of his post-operative progress. Therefore, as a matter of law, the defendants' negligence cannot be established. *Gentile, supra.* Moreover, the Comparative Negligence Act is inapposite to plaintiff's claim of negligent after-care because the Act presumes the jury's ability to establish and weigh the negligence of *both* parties. *See* 42 Pa.C.S. § 7102(a). As noted, any negligence on the part of Dr. Panzarella as to plaintiff's after-care cannot be determined and a requisite to the operation of the Act is thus absent.

Hence, we agree with the trial court that *Gentile* remains viable and mandates the dismissal of plaintiff's claim of negligent after-care at retrial. This holding does not, of course, mandate the dismissal of negligent after-care claims where a patient's failure to cooperate is insignificant. Rather, in order to warrant dismissal, the patient's failure to comply with after-care instructions must, as a matter of law, preclude a determination of whether or not the physician was negligent in treating the condition which serves as the basis of the negligent after-care claim.

Lastly, defendants claim the trial court erred in permitting plaintiff's subsequent treating physician, Dr. Rex Herbert, to present expert medical testimony critical of Dr. Panzarella, after being offered only as a fact witness. Specifically, error is alleged in the fact that Dr. Herbert was permitted to testify as to the cause of plaintiff's torn meniscus and tracking patella.

■ Initially, we find that Dr. Herbert was offered as an expert witness. Indeed, plaintiff's counsel stated the following during Mr. Herbert's deposition, a videotape of which was presented to the jury:

> Let the record reflect to clear up any question ... Dr. Herbert is being offered here today as an expert in the limited capacity to testify only as to the opinions that he has given in the report[s] previously. He will not be commenting on any deviation from the standard [of care] or testifying in a manner which would be contrary to Dr. Panzarella in this case.... We have provided two reports in this case and I am making it clear that his testimony is limited to the scope of those reports.

(N.T., 1/28/94, p. 17.)

Thus, the question before us is not whether a fact witness improperly testified as an expert, but whether the expert's testimony exceeded the scope of the offer.

■ The admission of expert testimony is a matter within the sound discretion of the trial court and will not be disturbed in the absence of a clear abuse of discretion. *Beechwoods*

*Flying Service, Inc. v. Al Hamilton Contracting Corp.*, 504 Pa. 618, 476 A.2d 350 (1984).

The allegedly improper testimony of Dr. Herbert was as follows:

Q. Doctor, based upon your history, your physical examination of Mr. Ferguson, can you tell us, please, what in your opinion was the cause of the torn menicus [sic]?

[Objection.]

[Overruled.]

A. ... [I]t would be my opinion that the torn cartilage that I found at arthroscopy occurred on that date when he fell from the truck.

Q. Okay, Thank you. Doctor, in your opinion what was the cause, based on your history, physical and all your examinations, the arthroscopy and follow-up care, with a reasonable degree of medical certainty, what, in your opinion, was the cause of the degenerative condition, the joint condition in the patellogemoral joint?

[Objection.]

[Overruled.]

A. ... I would have to say that it is my opinion that the arthritis condition in his knee was in his kneecap, patella itself, was related to the way in which the patella was tracking that I found on the x-rays.

(N.T. at 52–54.)

We agree with the trial court that this testimony is not adverse to Dr. Panzarella. Dr. Herbert's statement that the meniscus tear was due to plaintiff's original injury does not impugn Dr. Panzarella in the absence of a statement from Dr. Herbert that the tear should have been discovered during the initial surgery. Likewise, Dr. Herbert's statement that plaintiff's knee degeneration was due to a tracking patella is not adverse to Dr. Panzarella unless Dr. Herbert also states that negligent· surgery caused the tracking. Indeed, Dr. Herbert explicitly refused, as follows, to impugn Dr. Panzarella's treatment of plaintiff:

Q. You have not agreed to render any expert opinions in this case criticizing the care provided by Dr. Panzarella, is that correct?

A. That is correct.

(N.T. at 61.)

Consistent with the offer presented by plaintiff's counsel, Dr. Herbert did not testify as to any deviation from the standard of care by Dr. Panzarella. The admission of the testimony was therefore proper.

█ In the instant case, a new trial was granted on the basis that the jury was allowed to consider an improper claim of negligence. Since the verdict form did not disclose which claim or claims served as the basis of the jury's finding of negligence, the trial court was unable to gauge the impact of the improper submission of plaintiff's third claim. Accordingly, the trial court did not abuse its discretion in granting a new trial.

For the foregoing reasons, we affirm the June 17, 1994 Order granting defendants' motion for a new trial and denying their motions for judgment n.o.v. and remittitur.[1]

Order affirmed.

1. Motion to quash cross-appeal and answer thereto is denied as moot.