700 A.2d 927

**Lee E. FERGUSON, Appellant,**

v.

**Marius H. PANZARELLA, M.D. and Geisinger Medical Group, Appellees.**

Supreme Court of Pennsylvania.

Argued Dec. 10, 1996.

Decided Sept. 18, 1997.

110

Joseph P. Lenahan and Myles P. McAliney, Scranton, for Lee E. Ferguson.

Richard C. Seneca, Etters, Brooks R. Foland, Harrisburg, and David J. Felicio, Lewisburg, for Panzarella, et al.

Before FLAHERTY, C.J., and ZAPPALA, CAPPY, CASTILLE, NIGRO and NEWMAN, JJ.

## OPINION

ZAPPALA, Justice.

This is a medical malpractice case involving claims of negligence in the performance of surgery and in post-operative care. The trial court granted the defendants a new trial, holding that under *Gentile v. Devirgilis*, 290 Pa. 50, 138 A. 540 (1927), the issue of negligent after-care should not have gone to the jury. The Superior Court affirmed, 445 Pa.Super. 23, 664 A.2d 989 (1995). We granted allocatur, 544 Pa. 609, 674 A.2d 1072 (1996), and now reverse.

The Appellant, Lee E. Ferguson, sustained a knee injury, a rupturing of the right quadriceps tendon, which connects the quadriceps muscle in the thigh to the patella or kneecap. He came under the care of Appellee, Dr. Marius H. Panzarella, an orthopedic surgeon employed by Appellee Geisinger Medical

Group.   Panzarella performed surgery on April 29, 1990, to repair the damage.

Thereafter Ferguson saw Panzarella at intervals of two to three weeks.   In early June of 1990, Panzarella replaced the cast Ferguson had been wearing with a Bledsoe brace to allow flexing of the leg within a controlled range.   In mid-July, Ferguson began physical therapy, but due to his dissatisfaction with the provider he asked Panzarella to arrange for the therapy elsewhere.   This was done, and Ferguson attended therapy five days a week through August and September, and then two to three days a week.   According to Ferguson, throughout this period he complained to the physical therapist and to Panzarella that he was in pain and that his knee did not feel right.   He received several anti-inflammatory medications and, in December of 1990, a steroid injection to reduce swelling in the knee.

By this point, Ferguson testified, he became "disgusted" with Panzarella because he was not receiving any relief from the pain, and so he began seeking another doctor.   He saw Panzarella again on February 8, 1991, at which time he refused Panzarella's suggestion of another steroid injection because the procedure was very uncomfortable and the previous injection had been ineffectual.   At about this same time, his physical therapy was suspended.   Ferguson saw Panzarella once more on April 19, 1991.   Again he rejected Panzarella's recommendation of a steroid injection.   According to Ferguson, he asked about the possibility of arthroscopy and Panzarella replied that it was unnecessary.

Between December of 1990 and September of 1991, Ferguson consulted with several physicians.   The last of these, Dr. Rex A. Herbert, examined Ferguson and diagnosed his problem as arthritis due to improper "tracking" of the kneecap. In other words, the underside of the kneecap was rubbing against the thigh bone because the kneecap, instead of aligning in a centered and even fashion, was being pulled to the side, where it was closer to the bone.   In October of 1991, Herbert performed arthroscopic surgery during which he smoothed the surface of the joint.   He also "released" the

tissue that was pulling the kneecap to the outside, thus allowing the kneecap to center itself better. In addition, he discovered and repaired a torn meniscus, which he described as cartilage that permits the even distribution of forces in the knee joint.

Ferguson brought this action alleging that Panzarella had been negligent in (1) failing to diagnose and repair the torn meniscus, which caused Ferguson pain and discomfort until it was corrected, (2) failing to properly align the kneecap during the surgery to repair the quadriceps tendon, which resulted in a permanent, painful and disabling arthritic condition, and (3) failing to provide proper post-operative care. The jury was instructed as to the three separate claims of negligence, and was also instructed as to the defense of contributory negligence, which the court explained was applicable only to the third claim. The verdict fixed damages at approximately $240,000 and apportioned sixty percent of causal negligence to Panzarella and forty percent to Ferguson.

On post-verdict motions, the Appellees argued, among other things, for judgment n.o.v. or a new trial. They asserted that the court erred in denying their motion for directed verdict as to the claim of negligence in post-operative care, citing *Gentile v. Devirgilis*, 290 Pa. 50, 138 A. 540 (1927). The court agreed. Since it could not be determined whether the jury had found Panzarella negligent as to all claims or only as to the third claim, the court ordered a new trial.

The Appellant argues that the court erred in applying *Gentile* to these facts.[1] In that case, a woman, eight months pregnant, suffering with pain in her lower jaw went to a dentist, who recommended an extraction. According to the complaint, in the course of the procedure a tooth broke. The

---

1. The Appellant also argues that the issue on which the court granted a new trial was waived. We disagree. There was extensive evidence about the post-operative course of treatment. In addition to lay testimony about Panzarella's conduct and expert opinion about whether it met the standard of care expected of a reasonable physician, Ferguson's conduct in not seeing Panzarella as scheduled several times was the subject of testimony and argument, including the defendants' motion for directed verdict.

dentist told the woman to go home, rinse with salt water, apply an ice bag to her face, and return the next day for further examination and treatment. However, she did not return until four days later, by which time "a serious condition had arisen in her jaw." 290 Pa. at 52, 138 A. at 540. The dentist immediately referred her to a specialist, who removed the root of a tooth, allegedly the tooth that had broken during the extraction. Eventually, the woman was treated for osteomyelitis of the lower jaw and suffered scarring, disfigurement, and difficulty in chewing. The woman and her husband sued the dentist. The trial court directed a defense verdict. On appeal, we affirmed.

Ferguson argued that the Comparative Negligence Act effectively overruled or at least modified the holding of *Gentile*, and that where it is asserted that a patient did not cooperate in post-surgical treatment it is for the jury to assess the parties' relative fault, as occurred here. The trial court rejected this argument, emphasizing the following language from *Gentile:*

> we cannot see wherein it could be said that defendant was guilty of any negligence. "It is the duty of the patient to coöperate with his professional adviser, .... but if he will not, or under the pressure of pain cannot, his neglect is his own wrong or misfortune, for which he has no right to hold his surgeon responsible."

*Id.,* quoting *McCandless v. McWha,* 22 Pa. 261, 268 (1853). The court observed that we did not state that the plaintiff was barred from recovery because of contributory negligence. Rather we stated that it could not be found that the dentist was negligent. Thus the court interpreted *Gentile* as holding that a doctor may not be found negligent for post-operative care where the patient fails to cooperate.

In affirming, the Superior Court gleaned the following from *Gentile:*

> the problem that arises when a patient fails to substantially comply with a physician's post-operative instructions is that neither the court nor the jury can determine whether the

physician's after-care was negligent and, even assuming negligence, whether that negligence, or the plaintiff's neglect, caused the deteriorated condition.

445 Pa.Super. at 29, 664 A.2d at 992. The court found it "clear that plaintiff's substantial failure to cooperate in his postoperative care effectively precluded the defendants' assessment of his post-operative progress. Therefore, as a matter of law, the defendants' negligence cannot be established." *Id.* Since the defendants' negligence could not be established, an element necessary to invoke the weighing process of the Comparative Negligence Act was missing.

We are persuaded that the lower courts erred in interpreting *Gentile* and applying it in this case. It should first be noted that the statement from *McCandless v. McWha* quoted in *Gentile* was, in the context of the *McCandless* opinion, nothing more than an example of contributory negligence. Moreover, it was dictum or, at the very least clearly not the holding of the case.

In *McCandless*, a man alleged that a doctor was negligent in setting his broken leg with the result that when healed the leg was two inches shorter than the other. The jury entered a verdict in his favor. The issue on appeal was whether the court had erred in charging the jury by stating that the physician had a duty to use the skill necessary so as to make the leg straight and of equal length with the other when healed, and that if he did not he would be liable for damages just as a bricklayer would be for the collapse of a wall built with poor materials or a chimney that smoked for want of skill in its construction.

Our Court held that the instruction was erroneous both in the abstract and in the circumstances of the case.

The implied contract of a physician is not to cure—to restore a fractured limb to its natural perfectness—but to treat the case with diligence and skill. The fracture may be so complicated that no skill vouchsafed to man can restore original straightness and length; or the patient may, by

> wilful disregard of the surgeon's direction, impair the effect
> of the best conceived measures.

22 Pa. at 267. The instruction suggested that the doctor's obligation was not simply to use reasonable skill but in effect to warranty a cure. Thus it failed to allow for the possibility that the fracture was such that no treatment could have prevented the shortening of the leg, for which proposition our opinion cited various medical authorities, or for the possibility that the shortening of the leg could have been the result of misconduct of the patient. There was evidence in the case that the patient had loosened the bandages holding the splints in place.

It must also be pointed out that in *Gentile* the plaintiff claimed that the dentist was negligent not in breaking the tooth but in discontinuing the extraction, allowing the root to remain, and instructing her to return the next day. In the course of this Court's opinion it was noted several times that the evidence clearly established that this was not negligent or improper practice. Even the plaintiff's expert conceded that in the case of a woman eight months pregnant, already nervous about the pulling of her teeth, it might be good practice not to prolong the operation and try to remove the root immediately but instead to have her return the following day. He also conceded that the leaving in of the root would not necessarily have brought on the infection. Moreover, another witness for the plaintiff offered the opinion that the infection existed prior to the extraction. These are "the facts shown" (or at least among them) that the Court was referring to when writing in *Gentile, "Under the facts shown* we cannot see wherein it could be said that defendant was guilty of any negligence." 290 Pa. at 54, 138 A. at 541 (emphasis added).

We acknowledge that the lower courts' interpretation of this sentence to mean that a patient's failure to follow instructions precludes a finding of physician negligence is not unfounded, given that it followed several sentences detailing the plaintiff's failure to follow instructions, and was immediately followed by the aforementioned quotation from *McCandless* dealing with a patient's failure to cooperate with treatment. Nevertheless,

the context of the entire opinion favors reading this sentence in the limited circumstances of the case, not as removing the question of contributory negligence from the jury in all such cases.

We note particularly that in rejecting the argument that the plaintiff's negligence was a question for the jury, we observed that this might have been true *"if the defendant had been preliminarily negligent . . . but defendant was not proved to have been negligent* in not removing the root of the tooth at the initial operation and in sending her home, advising her to return the next day." *Id.* In other words it was unnecessary for the defense of contributory negligence to go to the jury because the plaintiff failed to meet her initial burden of establishing the defendant's negligence.

■ We thus disagree with the Appellees' argument, which was accepted by the Superior Court, that a patient's failure to attend post-operative appointments makes it impossible as a matter of law for a jury to determine whether, and to what degree, the physician's negligence caused the injury. This was not the holding of *Gentile* and we find no justification for such a rule in the general principles of negligence law.[2] We agree with the Appellant's observation that

> in many types of complex cases . . . . juries are called upon to determine whether the parties are negligent, and whether this negligence constitutes a substantial factor in bringing about the harm. Given the testimony of the parties, the lay witnesses, the experts, and the instructions of the Court, a jury can reach an appropriate conclusion. Such verdicts are reached in many medical malpractice cases substantially more complicated than the one presented to the jury in this instance.

Appellant's Brief at 21.

■ We conclude that the issue of whether Panzarella was negligent in providing post-operative care was properly sub-

2. We think it noteworthy that in the nearly seventy years before this case, *Gentile* was never cited for the proposition that a patient's failure to follow his physician's post-operative instructions as a matter of law precludes a claim against the physician for negligence in the provision of such care.

mitted to the jury along with instructions regarding the defense that Ferguson was negligent as well in not attending all of his scheduled appointments. The jury attributed sixty percent of the causal negligence to Panzarella and forty percent to Ferguson. That verdict should not be disturbed.

Accordingly the orders of the Superior Court and the court of common pleas are reversed and the matter is remanded to the common pleas court for entry of judgment on the verdict.