J-A14038-23

**NON-PRECEDENTIAL DECISION - SEE SUPERIOR COURT O.P. 65.37**

| | | |
|---|---|---|
| MERRITT COLE AND BETH COLE, HIS WIFE | : | IN THE SUPERIOR COURT OF PENNSYLVANIA |
| | : | |
| Appellants | : | |
| | : | |
| v. | : | |
| | : | No. 2452 EDA 2022 |
| MARIA JANOSKI, ESQ., ADMINISTRATRIX OF THE ESTATE FOR SUIT PURPOSES ONLY FOR THE ESTATE OF RICHARD P. WALLACE, M.D. | : | |

Appeal from the Judgment Entered November 17, 2022
In the Court of Common Pleas of Philadelphia County
Civil Division at No(s): 190402312

BEFORE: PANELLA, P.J., DUBOW, J., and SULLIVAN, J.

MEMORANDUM BY SULLIVAN, J.:           **FILED OCTOBER 19, 2023**

Merritt Cole and Beth Cole (collectively "the Coles") appeal from the judgment entered against them and in favor of Maria Janoski, Esq., as Administratrix of the Estate of Richard P. Wallace, M.D. ("Dr. Wallace"). We affirm.

The trial court provided the factual and procedural history of this case, which we set forth in relevant part as follows:

> . . . Merritt Cole [("Mr. Cole")] and Beth Cole (husband and wife) brought this action against their family physician of more than [thirty] years, [Dr. Wallace], who died shortly after the lawsuit was filed, claiming that Dr. Wallace negligently treated Mr. Cole's hyperlipidemia by failing to ensure that Mr. Cole take a statin medication. Following the filing of a suggestion[] of death, [the Coles] brought a motion to obtain an order from the court to compel Dr. Wallace's widow to involuntarily assume the personal

defense of the action, which the court denied as procedurally improper and without prejudice to the right to properly and procedurally correctly refile once the Registrar of Wills had properly designated a personal representative for the estate. A substitution was thereafter filed appointing Maria Janoski, Esquire, as admistratrix *ad* [*litem*] . . .. [The estate pleaded the defense of comparative negligence in its answer and new matter. ***See*** Answer and New Matter, 7/17/19, at ¶ 24. Prior to trial, the Coles filed a motion *in limine* to preclude testimony by defense expert witness Edward Gary Lamsback, M.D.]

* * * *

[The Coles, in their motion *in limine*, sought] to preemptively prevent [Dr. Lamsback] from presenting [testimony] on the treatment records and contents of Dr. Wallace['s files] showing repeated documented occasions in which Mr. Cole declined or refused to follow Dr. Wallace's treatment recommendations for diagnostic testing, prescription, lifestyle modifications[,] or other treatments. [The Coles] argue[d] that, [if] the court allowed this . . . testimony, it introduced an element of [comparative] negligence on the part of conduct refusal or inaction of Mr. Cole that [would] undermine[] the [Coles'] case by . . . taking the focus off the doctor and putting it on Mr. Cole [and his compliance or non-compliance with Dr. Wallace's treatment recommendations. The trial court denied the motion *in limine*.]

* * * *

. . . [This matter proceeded to trial from May 31, 2022 - June 2, 2022. The Coles' theory at trial was not] that Dr. Wallace "failed to diagnose" Mr. Cole's underlying condition OR failed to inform him of the results of his informative and timely medical tests (revealing elevated cholesterol, also known by the medical term "hyperlipidemia") OR provided treatment that exacerbated his condition and failed to advise of healthy lifestyle changes. [The Coles'] claim was that Dr. Wallace "should have written," that is, physically written or electronically transmitted to some unknown pharmacy, a prescription . . .. [The Coles'] experts presented a radically different . . . portrait of the physician-patient relationship and the obligations of a treating family physician . . . to the jury th[a]n did defendants. In their argument, a physician not only discusses the subject with the patient and makes a recommendation, relying upon the patient's own autonomy and

judgment to make the ultimate decision, but somehow unilaterally "prescribes" [medication] . . .. [Additionally, the Coles argued that Dr. Wallace's periodic recommendation of CT scans to monitor the buildup of plaque in Mr. Cole's arteries, via calcium deposits, was below the applicable standard of care for hyperlipidemia, and that Dr. Wallace instead should have simply prescribed Mr. Cole a statin once his LDL reached 190.] . . ..

* * * *

[The Coles] only presented the live testimony before the jury of one of its experts – [] Michael Soboeiro[, M.D.] The [Coles'] other [expert] witnesses were presented via video depositions . . .. [Merritt and Beth Cole also testified.]

* * * *

[The trial court additionally admitted] testimony from the defense medical witnesses, [Dr. Lamsback and Frank C. McGeehin, M.D.,] two doctors who reviewed the records of Dr. Wallace and outlined the history of the treatment of Mr. Cole— what it consisted of, how Dr. Wallace communicated with him and what recommendations Dr. Wallace made (and the extent to which Mr. Cole complied with them).

* * * *

[Following the closing, t]he jury returned a verdict on June 2, 2022, in which it answered the first jointly agreed upon jury interrogatory on the verdict slip[,] "No," *i.e.*, determining after deliberation that Dr. Wallace was not negligent in his care of Mr. Cole.

Trial Court Opinion, 9/16/22, at 1, 2, 4, 7, 9 (paragraphs re-ordered for clarity). The Coles filed a timely post-trial motion, which the trial court

denied.[1]  The Coles timely appealed,[2] and both the Coles and the trial court complied with Pa.R.A.P. 1925.[3]

The Coles raise the following issue for our review:

1. Did the trial court abuse its discretion in permitting the defense experts to offer opinion testimony beyond the fair scope of their reports[,] resulting in an unjust verdict[?]

2. Did the trial court abuse its discretion in denying [the Coles'] pretrial motion *in limine* to bar evidence of comparative or contributory negligence on the part of [Mr. Cole,] resulting in an unjust verdict?

Coles' Brief at 1, 4 (unnecessary capitalization omitted; issues re-ordered for ease of disposition).

Both of the Coles' issues concern the trial court's evidentiary rulings. We have articulated our scope and standard of review for evidentiary rulings as follows:

We review a trial court's evidentiary decisions for an abuse of discretion.  In this context, discretion is abused when the course pursued represents not merely an error of judgment, but where the judgment is manifestly unreasonable or where the law is not

---

[1] The order denying the Coles' post-trial motion is dated September 6, 2022, time-stamped August 15, 2022, and docketed September 16, 2022.

[2] While the Coles appealed on September 22, 2022, following the denial of their post-trial motion, the trial court had yet to enter a judgment; however, following a rule to show cause issued by this Court on November 14, 2022, the Coles filed a praecipe for judgment on November 16, 2022, and the trial court entered judgment on November 17, 2022.

[3] The trial court, in lieu of an opinion pursuant to Pa.R.A.P. 1925(a), directed this Court to its September 16, 2022 memorandum and order in which it denied the Coles' post-trial motion and stated therein the reasons for its ruling.  **See** Statement of Reasons, 12/27/22.

applied or where the record shows that the action is a result of partiality, prejudice, bias or ill will. To reverse the trial court, th[is C]ourt must consider all the evidence in the light most favorable to the appellee and conclude that the verdict would be changed if another trial were granted.

***Hassel v. Franzi***, 207 A.3d 939, 950 (Pa. Super. 2019) (internal citations, quotations, and some brackets omitted).

In their first issue, the Coles argue the trial court erred in permitting the defense experts to testify outside the fair scope of their expert reports. Pennsylvania Rule of Civil Procedure 4003.5(c) provides, in relevant part, that "the direct testimony of the expert at the trial may not be inconsistent with or go beyond the fair scope of his or her testimony in the discovery proceedings as set forth in the deposition, answer to an interrogatory, separate report, or supplement thereto." Pa.R.C.P. 4003.5(c).

In applying Rule 4003.5(c), this Court has observed,

[I]t is impossible to formulate a hard and fast rule for determining when a particular expert's testimony exceeds the fair scope of his or her pretrial report. Rather, the determination must be made with reference to the particular facts and circumstances of each case. The controlling principle which must guide is whether the purpose of Rule 4003.5 is being served. The purpose of requiring a party to disclose, at his adversary's request, the substance of the facts and opinions to which the expert is expected to testify is to avoid unfair surprise by enabling the adversary to prepare a response to the expert testimony. In other words, in deciding whether an expert's trial testimony is within the fair scope of his report, the accent is on the word "fair." The question to be answered is whether, under the particular facts and circumstances of the case, the discrepancy between the expert's pretrial report and his trial testimony is of a nature which would prevent the adversary from preparing a meaningful response, or which would mislead the adversary as to the nature of the appropriate response.

*Hassel*, 207 A.3d at 951 (internal citations and quotations omitted).

The Coles argue the trial court abused its discretion in permitting the defense experts to testify outside the fair scope of their reports. According to the Coles, "[n]either defense expert articulated in their reports the standard of care for the management of hyperlipidemia." Coles' Brief at 46. The Coles assert that Dr. Lamsback wrote a "rambling report" setting forth how Dr. Wallace's care was "reasonable and appropriate and met the standard of care for [Mr.] Cole," and that Dr. McGeehin admitted on cross examination that he did not "articulate the standard of care in his report . . .." *Id*. According to the Coles, neither doctor set forth his opinion about what the standard of care was "in [his] respective expert report[.]" *Id*. at 47.

The trial court considered the Coles' assertions and concluded they were meritless:

> As to contents of the testimony of defense medical experts, it is clear from the record that [the Coles'] counsel interposed a barrage of objections during testimony of the defense experts, repeatedly asserting that questions sought testimony "beyond the scope" of the experts' reports. The court has reviewed each and every such evidence objection in the transcript, side-by-side with the reports, and has determined that the information elicited fell well within the fair scope of matters clearly discussed in the reports and derivable from the witness' discussion and analysis. The record of the trial reveals that [the Coles'] apparent concerns were not based upon any purported prejudice or surprise occasioned by the testimony of the defense experts or any lack of foundation for the experts' conclusions (both doctors exhaustively reviewed Dr. Wallace's records as well as Mr. Cole's deposition testimony). Indeed, [the Coles] seemed to have had a problem with how the defense experts interpreted the records and the conclusions that they were able to draw from [Mr. Cole's] medical

history, a history that revealed a pattern of declining to initiate drug treatment and repeated failure to follow-up on testing and return visits.  . . ..

* * * *

. . . [T]he [Coles] now contend that [the defense] experts failed to use sufficiently "magic" language in their reports to be able to express an opinion at trial on the standard of care.  . . . However, both medical doctors thoroughly discuss the salient points of Dr. Wallace's treatment, his noted recommendations and the ongoing progress.  Both expert reports clearly state their assessments as to what aspects of Dr. Wallace's records support the conclusion that his treatment was appropriate for [Mr. Cole's] condition.  Clearly, the finding that a treatment was appropriate sufficiently encompasses and equates with the conclusion that the treatment met the standard of care.  [The Coles'] linguistic machinations are without merit[,] as the court finds that the reports sufficiently apprised [the Coles] of the experts reasoning and conclusions and their testimony at trial was within the fair scope of their reports.

* * * *

The [Coles'] grounds for . . . relief are largely focused on the contents of the expert reports and whether the testimony exceeded the fair scope of the reports.  . . ..

* * * *

There is no suggestion here that [the Coles] were surprised by the testimony of the defense experts.  Rather it appears that they strenuously disagreed with the defense experts' conclusions and disputed whether the conclusions were supported by the evidence at trial or a fair representation of the contents of Dr. Wallace's records. . . ..

Trial Court Opinion, 10/24/22, at 11-13, 22-23 (footnote and citations omitted).

Following our review, we discern no abuse of discretion by the trial court in determining that the testimony of Drs. Lamsback and McGeehin was within

the fair scope of their expert reports. Dr. Lamsback's expert report opined that Dr. Wallace met the standard of care for hyperlipidemia, as is shown in the following excerpts:

> A chart from May 31, 2000 confirms that[,] at this point[, Dr. Wallace] recommend[ed] starting medication to reduce cholesterol. . . . A note to contact the office was in the records. A chart entry on February 2, 2004 confirmed that the cholesterol level remained elevated[,] and it was time to consider medication and a new heart scan. . . ..

> Dr. Wallace continued to provide **reasonable and appropriate primary care** over the next 10 years.

> \* \* \* \*

> Review of records provided confirms that Dr. Wallace recommended cholesterol[-]reducing medication in June 1997[,] in addition to June 2000 and February 2001. This is clearly documented in Dr. Wallace's chart notations. Dr. Wallace made these recommendations based on evaluating the patient[']s risk profile and by appreciating that statins, especially the early versions[,] had potential significant adverse effects . . ..

> \* \* \* \*

> . . . [Mr.] Cole was provided with multiple opportunities to treat his hyperlipidemia and[/]or to proceed with testing that would have resulted in the need to treat his hyperlipidemia . . .. [Mr.] Cole did not pursue these multiple and reasonable opportunities that were provided to him. The care provided by Dr. Wallace met the **standard of care** and was reasonable and appropriate.

Lamsback Report, 12/20/20, at 2, 5, 6 (emphases added). This is consistent with Dr. Lamsback's testimony that Dr. Wallace met the standard of care. **See**, **e.g.**, N.T., 6/2/22, at 48.

We additionally note that Dr. McGeehin also expressly opined in his expert report that Dr. Wallace complied with the applicable standard of care:

> Records from May 31, 2000 recommend initiation of drug therapy for dyslipidemia.[4]  This was also reconfirmed in the visit of February 2, 2002. . . .
>
> Dr. Wallace was regularly monitoring and discussing Mr. Cole's lipid profile.  . . .  Repeatedly, Dr. Wallace spoke to Mr. Cole regarding initiation of statin therapy.  These discussions included potential side effects.  The patient was also advised to undergo repeat coronary CT scanning seven times between 2008 and 2018.  The patient had also been advised to undergo stress testing in October 2017 which was not performed.
>
> * * * *
>
> The most important issue here is that Dr. Wallace meticulously followed and discussed Mr. Cole's risk factors for [coronary artery disease].   Mr. Cole elected to forego pharmacologic and further diagnostic testing, as was his right.  ***Dr. Wallace met and exceeded the standard of medical care over decades with Mr. Cole***.  At the end of the day, physicians offer advice but cannot force patients to initiate treatments regardless of the medical literature showing benefit. . . ..

McGeehin Report, 1/12/21, unnumbered at 2-3 (emphasis added).  This was consistent with Dr. McGeehin's trial testimony.  ***See***, ***e.g.***, N.T., 6/2/22, at 97.  As both of the defense experts' reports expressly spoke to whether Dr. Wallace complied with the standard of care in his treatment of Mr. Cole, we conclude that the trial court did not abuse its discretion in determining that

---

[4] Dyslipidemia is the imbalance of lipids such as cholesterol, low-density lipoprotein cholesterol, triglycerides, and high-density lipoprotein.

the doctors' testimony did not exceed the fair scope of their reports. Thus, the Coles' assertion of error on this point is meritless.

In their second issue, the Coles argue the trial court erred in denying their motion *in limine* to preclude testimony by Dr. Lamsback. The standard of review for challenges to rulings on motions *in limine* is as follows:

> A motion *in limine* is used before trial to obtain a ruling on the admissibility of evidence. It gives the trial judge the opportunity to weigh potentially prejudicial and harmful evidence before the trial occurs, thus preventing the evidence from ever reaching the jury. A trial court's decision to grant or deny a motion *in limine* is subject to an evidentiary abuse of discretion standard of review.

*Parr v. Ford Motor Co.*, 109 A.3d 682, 690 (Pa. Super. 2014) (internal citations and quotations omitted). Additionally, to be admissible, evidence must be relevant; relevance is defined as "having any tendency to make the existence of any fact that is of consequence to the determination of the action more probable or less probable." Pa.R.E. 401, 402. Even if evidence is relevant, it may be excluded if its probative value is outweighed by, *inter alia,* the danger of unfair prejudice, confusing the issues, or misleading the jury. *See* Pa.R.E. 403; *see also Parr*, 109 A.3d at 696. Further, if a party presents evidence about a certain issue, then they possibly open the door to rebuttal evidence that may have otherwise not been admissible. *See Tillery v. Children's Hosp. of Philadelphia*, 156 A.3d 1233, 1243 (Pa. Super. 2017); *see also Charlton v. Troy*, 236 A.3d 22, 40 (Pa. Super. 2020). Lastly, both physician negligence and the patient's comparative negligence are questions that are properly submitted to a jury. *See*, *e.g.*, *Ferguson v. Panzarella*,

700 A.2d 927, 930 (Pa. 1997); **see also Zieber v. Bogert**, 747 A.2d 905, 909 (Pa. Super. 2000) (providing that physician defendants "were entitled to an appropriate jury instruction on the comparative negligence of [the plaintiff] because there was some evidence of comparative negligence to warrant the instruction").

The Coles argue the trial court erred in denying their motion *in limine* seeking preclusion of testimony by Dr. Lamsback based on relevance. Specifically, the Coles argue that Dr. Wallace failed to meet the standard of care for a patient with hyperlipidemia, because he did not write a prescription for a statin, and, accordingly, any failures on Mr. Cole's part to obtain follow-up scans or take other recommended action is not relevant to Dr. Wallace's asserted negligence. **See** Coles' Brief at 38-40. The Coles further argue that "the focus on [Mr. Cole's] supposed failure to follow the recommendation for a repeat CT scan is irrelevant since he should have been on statin medication no later than 2004 and, as . . . Dr. McGeehin acknowledged, a CT scan is not [the] standard of care for patients on statin medications." **Id**. at 41.

The trial court considered this issue and determined it lacked merit:

> . . . [The Coles] raised the issue of Mr. Cole's conduct when they elicited testimony from Mr. Cole to the effect that "if Dr. Wallace had prescribed it, [*i.e.*, statins,] Mr. Cole would have taken it," and, presumably, it would have completely immunized him in perpetuity from the consequences of his high cholesterol. That proposition necessarily implicates the matter of Mr. Cole's conduct. Mr. Cole, by making this declaration, opened the door to th[e] issue of his [compliance] with Dr. Wallace's various written treatment recommendations. . . . The jury could, and apparently did, conclude that Dr. Wallace did tell Mr. Cole about

- 11 -

statins, and further concluded that Mr. Cole simply was not credible when he denied having [a] conversation [to that effect]. . ..

[In any event, t]he jury never reached issue of comparative or contributory negligence. It was never asked to focus on whether Mr. Cole bore any fault for his medical condition. The jury focused on one question and one question alone in the agreed upon verdict slip—did all [of] the things Dr. Wallace did over thirty years of serving as Mr. Cole's family physician fall short of what the doctor needed to [do] in the treatment of Mr. Cole's risks for cardiovascular disease. The trial jury looked at[:] thirty years of written medical records[;] . . . the recommendations[;] . . . the various tests that were ordered[,] and the ones whose results Dr. Wallace had[;] what Dr. Wallace provided to [Mr. Cole] in response to the information available and the known risks[,] and decided that Dr. Wallace had provided appropriate treatment within the standard of care for a doctor in his position. The jury never got to causation or to the qualifying effect of [Mr. Cole's] conduct . . ..

Trial Court Opinion, 10/24/22, at 20-21. Additionally, Appellee argues that

"[t]he presentation of the defense of comparative negligence, when supported

by the evidence, is a matter of right of the defendant, and not subject to

discretionary preclusion." Appellee's Brief at 30.

Based on our review, we conclude the trial court properly exercised its

discretion in denying the Coles' motion *in limine* and permitting testimony by

Dr. Lamsback. Appellee pleaded the defense of comparative negligence. ***See***

Answer, 7/17/19, at ¶¶ 24-26 (pleading the defense of comparative

negligence). As shown above, Dr. Lamsback's testimony was relevant to the

defense of comparative negligence insofar as Dr. Lamsback testified about Mr.

Cole's non-compliance with Dr. Wallace's recommendations. This evidence

was properly put before the jury. ***See Ferguson***, 700 A.2d at 930; ***see also***

*Zieber*, 747 A.2d at 909. *Accord* Verdict Sheet, 6/2/22 (Question 3, which the jury did not reach, asking, "Was [Mr.] Cole comparatively negligent?").[5] Further, as discussed *supra*, Dr. Lamsback's testimony was also relevant to the issue of whether Dr. Wallace's treatment of Mr. Cole complied with the applicable standard of care. *See*, *e.g.*, N.T., 6/2/22, at 41-42 (Dr. Lamsback opining, "Really the standard of care is to have a discussion . . . . When a prescription wasn't written, the conclusion [is] the patient didn't want the statin . . . So[,] you wouldn't write [it] . . .. . . . You educate and . . . the patient [decides]"); *see also id*. at 48 (Dr. Lamsback opining that Dr. Wallace met the applicable standard of care).

We additionally discern no abuse of discretion by the trial court, in permitting Dr. Lamsback to testify about Mr. Cole's compliance with Dr. Wallace's treatment recommendations, because, as the trial court concluded, Mr. Cole opened the door to this line of questioning with his own testimony. Mr. Cole testified that if Dr. Wallace had prescribed him a statin for cholesterol, "Oh, of course," he would have taken it. N.T., 6/1/22, at 110. Only after Mr. Cole's trial testimony did Dr. Lamsback testify about Mr. Cole's compliance with Dr. Wallace's recommendations. *See*, *e.g.*, N.T., 6/2/22, at 17-18 (Dr. Lamsback testifying that in June 2000, Dr. Wallace recommended medication

---

[5] "On appeal, the reviewing court may affirm for any sound reason, and is not limited to the grounds relied upon by the trial court if the result is correct." *Larsen v. Philadelphia Newspapers, Inc.*, 602 A.2d 324, 332 (Pa. Super. 1991).

to reduce Mr. Cole's cholesterol, and asked Mr. Cole to "[p]lease contact the office," but there was no "evidence that there was any follow-up by [Mr. Cole]"); *see also id*. at 38 (Dr. Lamsback testifying, "I mean, [Dr. Wallace] repetitively [sic] called about canceled appointments, missed appointments and continually brought it up[;] let's get the CAT scan. . .. Wrote a note saying we need to find out about the plaque. The patient got the notes and chose not to do it"). As Mr. Cole opened the door to this line of inquiry, Dr. Lamsback's testimony was appropriate for this reason as well. *See, e.g.*, *Tillery*, 156 A.3d at 1243; *see also Charlton*, 236 A.3d at 40. Because Dr. Lamsback's testimony about Mr. Cole's compliance with Dr. Wallace's recommendations was relevant to the properly pleaded defense of comparative negligence, and, further, Mr. Cole opened the door to this testimony, Mr. Cole is due no relief.

Order affirmed.

Judgment Entered.

Benjamin D. Kohler, Esq.
Prothonotary

Date: 10/19/2023