J-A21021-14

**NON-PRECEDENTIAL DECISION - SEE SUPERIOR COURT I.O.P. 65.37**

| | |
|---|---|
| BATTAGLINI & CO., P.C. | IN THE SUPERIOR COURT OF PENNSYLVANIA |
| v. | |
| ISADORE BRODSKY INSTITUTE FOR BLOOD DISEASES AND CANCER<br>                    Appellant | |
| ISADORE BRODSKY INSTITUTE FOR BLOOD DISEASES AND CANCER<br>                    Appellant | |
| v. | |
| BATTAGLINI & CO., P.C. | |
| | No. 185 EDA 2014 |

Appeal from the Judgment Entered February 20, 2014
In the Court of Common Pleas of Chester County
Civil Division at No(s): 12-07244
12-07399

BEFORE:  BOWES, J., OTT, J., and STRASSBURGER, J.[*]

MEMORANDUM BY OTT, J.:                    **FILED JANUARY 14, 2015**

Isadore Brodsky Institute for Blood Diseases and Cancer ("Institute")

appeals from the judgment of the Court of Common Pleas of Chester County,

entered February 20, 2014, in favor of Battaglini & Co., P.C. ("Battaglini"),

and against the Institute in the aggregate amount of $4,356.00.   The

underlying matter was a consolidated action, involving an accounting firm,

---

[*] Retired Senior Judge assigned to the Superior Court.

Battaglini, and its client, the Institute, concerning disputes over a bill and whether Battaglini's services were rendered in conformity with a contractual agreement between the parties. On appeal, the Institute raises the following three issues, which concern the trial court's determination that the Institute was required to present expert testimony: (1) where Battaglini acknowledges that auditing standards and its contractual agreement obligated it to confirm bank balances and accounts payable to a major vendor, such acknowledgments eliminate the need to present an expert witness to testify that such obligations exist; (2) where Battaglini's audit reflects changes from its client's books and records as to critically important items, and it offers no explanation for the changes and has destroyed the work papers, there is no analysis function which can be provided by an expert witness, and therefore, no need to present such an expert witness; and (3) where the trial court explained in making an award to Battaglini that it would not have done so had the accountant been found to have breached the agreement to perform an audit, and therefore, a new trial is necessary in order to prove such a breach. *See* Institute's Brief at 4.

The trial court set forth the facts and procedural history as follows:

Battaglini filed first, followed a few days later by a separate complaint filed by the Institute in lieu of filing a counterclaim. Subsequently, both matters were consolidated.

In the matter of *I. Brodsky Institute for Blood Disease and Cancer v. Battaglini & Co., P.C.*, [Docket Number 2012-07399,] the second action, docketed at 2012-07399, paragraph 17 of the Institute's complaint alleges that Battaglini breached its

- 2 -

contractual undertaking by presenting financial statements in its audit report which materially misstated the opening and closing cash balances for the 2007 fiscal year. Additionally, it was alleged that as of the beginning of the 2007 fiscal year, Battaglini failed to report an account payable of some $229,800, thereby materially misrepresenting the Institute's financial position. In paragraph 18, the Institute claimed that it suffered "damage by virtue of such breach." It sought the return of the $5,500 it paid to Battaglini for its work, as well as an additional $10,000 which it claimed was the value of the services contributed to it in an attempt to reconcile the disputed matters. The Institute requested the total amount of $15,500 accordingly.

Battaglini filed an Answer, as well as New Matter, raising a number of affirmative defenses, to which the Institute made Reply. Battaglini asserted that it followed generally accepted audit standards (GAAS).

Turning to the action filed a few days earlier, *Battaglini & Co., P.C. v. Isadore Brodsky Institute for Blood Disease and Cancer*, [Docket Number 2012-07244,] claim was made for the unpaid balance of the bill for professional services rendered by Battaglini when preparing the audit for the fiscal year ending 2007 and the tax return which accompanied same. The Institute allegedly demanded that Battaglini redraft the tax return to show reversals of certain transfers set forth therein between the "restricted" and the "unrestricted" operating funds. Battaglini claimed that such reversals were not proper, but did what the client requested and billed $3,305 for its additional services. That is the amount of damages claimed to be done.

To this, the Institute filed an Answer, but no New Matter and no Counterclaim. Within the Answer it is fair to say that the Institute denied that it has any contractual duty to pay Battaglini for the claimed additional services, and further denied that the Institute "breached any agreement or contractual undertaking to pay Battaglini."

A jury trial was demanded. [The two day jury trial began on August 27, 2013.]

…

- 3 -

The claim by the Institute against Battaglini was tried first. The Institute called its treasurer, Mark Fishman, who told the jury that the purpose of the Institute was to raise money to assist Dr. Brodsky in doing research into blood diseases, cancer and related illnesses. Dr. Brodsky was a driving force behind the Institute and most of the contributors were grateful patients of his. Before he became ill and died, the Institute was the recipient of substantial donations every year, including from the Flyers' Wives Carnival. However, that source of funds dried up and the death of Dr. Brodsky was a devastating blow to the Institute. Fishman conceded that with respect to the audit in question for the year 2006-2007, in which Battaglini raised a serious concern with whether the Institute was going to be a going concern, was no surprise to him.

The Institute next called Henry Whitlark, employed in a senior administrative capacity at the Institute. It was Whitlark who brought the Battaglini firm to the Institute as an independent auditor back in 2001. Whitlark testified that Battaglini's work was "perfect."

On the second day of trial, the defense started its case and called Joseph D. Battaglini, CPA and President of Battaglini & Company, P.C. as a witness. Battaglini testified that under his engagement letter, his services are to be rendered in accordance with General Accepted Audit Standards (GAAS). The purpose of an independent audit he said is to take the accounting documents from the client and express an opinion as to whether they are a fair representation of the company. In that manner, the public receives an honest opinion from an independent third party regarding the suitability and sustainability of a company. Furthermore, although the Institute pays his bill, he has duties to the Commonwealth of Pennsylvania Bureau of Charitable Organizations, which requires that charities of this size have an audit done, and he sends a copy directly to the Bureau.

Battaglini changed certain numbers to reflect the true balances in the restricted and unrestricted fund accounts in his opinion. The restricted funds had been raided in order to put money in the unrestricted funds account so that the Institute could pay bills. As an independent auditor, he reversed those transactions. It is part of his duty as an independent auditor to evaluate whether a company is a going concern and he was performing not only that duty, but a requirement of the audit

process to evaluate the company's ability to continue. He wrote to Mr. Whitlark in 2008 identifying and outlining his opinions and concerns. He was not going to change his numbers in the audit to correspond to the Institute's numbers.

On cross examination, there was much wrangling between [the Institute]'s counsel and Mr. Battaglini. Counsel for the Institute, Mr. [Philip P.] Kolodner, repeatedly challenged the witness that his figures differed from the bank's figures. Time and again Mr. Battaglini explained his numbers could differ from the stated amounts on bank balance sheets because the Institute's books and records are kept on a cash basis whereas under the accrual basis of accounting[,] expenses may be recognized in the year incurred. For an accrual basis taxpayer, the money gets added back to the bank account as if those checks were never written, because they do not record the expense until the following year. The accountant variously responded "As I explained to you before, the bank balance does not always equal the correct balance as reported on the books." "I mean, you're asking me to compare apples and oranges…" "But you remember what I said about the accrual basis, you have to reverse the prior year accruals." When asked if the witness could account for certain differences, the witness said once again "No, because I explained to you that the difference between a cash balance per your records, cash balance per the bank records and the confirm bank balance through the account auditing records are different." "Mr. Kolodner, I've said this before, [a vendor,] Drexel University[,] confirmed to me that nothing was owed as of the end of June 30 of '06. Even though payments appear to have been made in July of 2006 Drexel confirmed that there were no outstanding balances as of June 30, 2006 so even though those checks may have been written in July of 2006 they were not allocable to the fiscal year 2005-2006 as confirmed by Drexel University."

Battaglini summed up as follows "So again I stand by the audit, I stand by the restricted fund balance as the proper accounting of that – independent of what the bank shows."

Trial Court Opinion, 2/25/2014, at 2-3, 8-11 (record citations and emphasis omitted).

After both parties presented their evidence, the court stated:

For some years now, whenever there is a suit alleging professional misconduct, malpractice, or breach of contract, as I'll mention in a moment, against a licensed professional in the state, there must be a certificate of merit, in the first instance, that is filed. These are the requirements that I refer to of [Pa.R.C.P.] 1042. And there was none filed in this case. Ordinarily, the absence of a certificate of merit is the end of any such case as this early on, but [the issue] was not [made] by the opposing party[.]

Nonetheless, under current case law, the standard for analyzing the duty of an accountant is, of course, determined in the first instance by regard to the accountant's engagement, what the contract says. There is an engagement letter that indicates that this accountant will perform certain services according to certain standards. One is the GAAP standard the other is the GAAS standard. Likewise, his opinion in his audit letter states that opinion [i]s consistent with those standards.

This is not a case of breach of contract where a specific instruction of the client was ignored; for example, file my 1041 for three years by X date and no returns are filed. This is something different, but not unusual with all professionals, be they accountants, attorneys, doctors, and any of the other that are listed in Rule 1042, because the case law, first starting with doctors and attorneys and now extending out to other professionals, indicates that a contract claim really is a claim that is based on an implicit agreement, that is, that the professional agrees to provide his or her best efforts and provide services and, by implication, the professional agrees to provide his or her client with professional services consistent with those expected of the profession at large.

Invariably, what happens is, as here, the judgment, the professional judgment of the individual has been called into question. And where a claim, be it contract or tort, implicates a professional duty, that is, where it arises within the course of a professional relationship, and necessarily raises questions of professional judgment, not only will a certificate of merit almost always be necessary, but expert testimony must be adduced so that the jury has some reference as to which standards they are to apply to gauge whether in fact the conduct has been within or below those accepted standards.

I wanted to give the Institute every allowance, but we have not had any expert testimony. And it is clear from certain comments made in opening statements and otherwise that, yes, while this is a breach of contract to provide a proper audit -- and I'm quoting from [counsel for the Institute's] opening remarks that the audit was improper, that the tax return was improper -- [counsel for Battaglini] at one point stopped to say what is an audit and gave us some information about what an auditor does and what they're supposed to do, and there was a wrangle over whether it was proper or improper to transfer funds from a restricted account to an unrestricted account in the fashion that occurred here. [Battaglini] stood by his opinion. And the issue was whether that was correct or not. No one comes in to say, notwithstanding the Institute's sincere … position, but no one comes into court to say that the audit was done incorrectly, or that the tax return, the initial tax return was done incorrectly.

And I went through here and highlighted a number of references merely to this same point: What is an audit process, whether it's proper to use the cash versus the accrual basis, whether there was something wrong that was done. The jury has absolutely nothing from an expert witness, qualified as such in this courtroom, to gauge what to do with regard to the parties' quite evident differences of view. I cannot send this case to the jury without expert testimony of the kind that the law tells me should have been provided early on, and certainly by this time.

The jury must have evidence as to what the professional services consistent with those expected of accountants or auditors at large are. The concepts of GAAS and GAAP are beyond the ken of most laymen, and certainly this Court.

And we must lastly remember that it is the substance of the complaint, not necessarily its wording, that controls these issues.

So, I'm going to direct a verdict in favor of Battaglini and Company and against the Institute in these related cases consistent with this problem.

N.T., 8/28/2013, at 199-203. The court then asked both parties to agree to it determining the verdict rather than having the jury do so. *Id.* at 203.

After speaking with his client, counsel for Battaglini consented. The court then asked: "So, [counsel for the Institute], it's entirely within your prerogative to play the matter out in front of the jury, but I offer to adjudicate that claim. And if you would like me to step off and let you -- or, if you want some time to pace the hall, you may have that." *Id.* at 204. Counsel for the Institute replied, "No, no, I'm satisfied to have the Court decide that claim, and obviously there will be an appeal." *Id.*

That day, the court entered the two orders, reflecting the following: (1) at Docket Number 2012-07399, a directed verdict in favor of Battaglini and against the Institute in no amount; (2) at Docket Number 2012-07244, a directed verdict in favor of Battaglini and against the Institute in the amount of $3,305.00, plus interest at the legal rate, in the amount of $1,051.00, totaling $4,356.00, plus costs and further interest until paid. The Institute filed post-trial motions, which were denied following oral argument on December 16, 2013. On February 20, 2014, judgment was entered, reflecting the directed verdict. The Institute filed this appeal.[1]

As a prefatory matter, we must address an issue raised in the argument section of Institute's brief, and also raised in its post-trial motions.

---

[1] The trial court ordered the Institute to file a concise statement of errors complained of on appeal pursuant to Pa.R.A.P. 1925(b). The Institute complied with the trial court's directive and filed a concise statement. The trial court issued an opinion pursuant to Pa.R.A.P. 1925(a) on February 25, 2014.

The Institute claims the court erred in entering a directed verdict *sua sponte*, which was in violation of Pa.R.C.P. 226(b). **See** Institute's Brief at 17. Specifically, the Institute contends it was a "procedural defect" because "a directed verdict in a jury trial cannot be entered in the absence of a motion for such and without allowing argument by the party against whom a verdict was to be directed." **Id.**

Rule 226 provides, in relevant part: "At the close of all the evidence, the trial judge may direct a verdict upon the oral or written motion of any party." Pa.R.C.P. 226(b).

While our research has failed to uncover any case law or statutory authority which permits a court to declare a directed verdict *sua sponte*, we find the Institute has waived this procedural contention. As noted above, the court informed the parties that it found there were serious evidentiary issues at trial and proposed a directed verdict, but only if both parties agreed. N.T., 8/28/2013, at 203. After Battaglini's counsel agreed, the court turned to the Institute's counsel and inquired as to whether he agreed to the court's action. The court even offered counsel time to deliberate the procedure. Counsel for the Institute replied, "**No, no, I'm satisfied to have the Court decide that claim**, and obviously there will be an appeal." **Id.** at 204 (emphasis added). The record demonstrates the Institute's counsel did not object, demand the matter go to the jury, or even ask for time for argument before the court. Rather, counsel acquiesced to the

court's action. As such, the Institute has waived this argument on appeal. "It is axiomatic that [i]n order to preserve an issue for appellate review, a party must make a timely and specific objection at the appropriate stage of the proceedings before the trial court. Failure to timely object to a basic and fundamental error will result in waiver of that issue." *Lockley v. CSX Transp., Inc.*, 66 A.3d 322, 325 (Pa. Super. 2013) (citation and internal quotation marks omitted); *see also* Pa.R.A.P. 302(a) ("Issues not raised in the lower court are waived and cannot be raised for the first time on appeal."). Accordingly, the Institute's first claim is waived.

Turning to the Institute's substantive claims, we will address them together due to their nature. As stated above, the Institute contends an expert witness was not necessary in this matter because (1) Battaglini acknowledged that the auditing standards and its contractual agreement obligated it to confirm bank balances and accounts payable to a major vendor, and failure to do so was a breach of his contract;[2] and (2) Battaglini

_____

[2] *See* Institute's Brief at 21-28. Put another way, the Institute also states:

> [A]s was the case with the closing balance, the issue is whether Battaglini is correct or whether the books of [] Institute are correct. If the trier of fact determines that [] Institute's books and bank statements are correct then, the inevitable inference is that Battaglini did not discharge his acknowledged obligation to confirm the opening balance and to confirm whether there was an account payable to Drexel University.

*Id.* at 27.

- 10 -

offered no explanation for the changes it made from the Institute's records and it destroyed the work papers.[3] Lastly, the Institute argues it is entitled to a new trial in light of the court's determination that if Battaglini had "breached the auditor's duties," the accounting firm would not have been able to recover any part of its award.[4]

After a thorough review of the transcripts from the trial, and our standard of review,[5] we conclude the trial court, in its Rule 1925(a) opinion,

---

[3] *See id.* at 28-30. Specifically, the Institute alleges that had Battaglini attempted to account for certain adjustments, "it would have been necessary for an expert witness to be presented to analyze the propriety of such adjustments." *Id.* at 29. The Institute states that because Battaglini did not do so, an expert was not necessary.

[4] *See* Institute's Brief at 31. The Institute states that because the court entered a directed verdict based on the failure to present an expert witness, it was precluded from obtaining a jury verdict that Battaglini had breached the parties' contract. *Id.*

[5]

> In reviewing the trial court's entry of a motion for a directed verdict, "our scope of review is limited to determining whether the trial court abused its discretion or committed an error of law that controlled the outcome of the case." *Fetherolf v. Torosian*, 2000 PA Super 260, 759 A.2d 391, 393 (Pa. Super. 2000). "A directed verdict may be granted only where the facts are clear and there is no room for doubt." *Id.* (*quoting Lear, Inc. v. Eddy*, 2000 PA Super 97, 749 A.2d 971, 973 (Pa. Super. 2000)). "In deciding whether to grant a motion for a directed verdict, the trial court must consider the facts in the light most favorable to the nonmoving party and must accept as true all evidence which supports that party's contention and reject all adverse testimony." *Id.*

*Berg v. Nationwide Mut. Ins. Co.*, 44 A.3d 1164, 1170 (Pa. Super. 2012).

thoroughly and accurately addressed the Institute's arguments. **See** Trial Court Opinion, 2/25/2014, at 3-11 (finding a new trial was not warranted based on the following: (1) in reviewing the substance of the complaint at issue, the case involved "professional negligence"[6] as the suit "called into question the accountant's professional judgment in the preparation of the audit report and tax returns, and [Battaglini]'s countering that [he] followed GAAS;"[7] (2) under current law, if the plaintiff "demonstrates by a preponderance of the evidence that the accountant has breached his or her contractual duty to provide services in a manner consistent with the profession at large, then the plaintiff has successfully established a breach of contract claim against the accountant;"[8] (3) with respect to this proof, the jury "must be informed as to what 'the professional services consistent with those expected of accountants at large' means" because "[t]he concepts of GAAS and GAAP are beyond the ken of most laymen,"[9] and therefore, where the professional negligence was not obvious and self-evident, expert

---

[6] "Pennsylvania Rules of Civil Procedure Nos. 1042.1--1042.8 … govern professional liability actions. These Rules apply to professional liability claims asserted against licensed professionals, including accountants. Pa. R.C.P. No. 1042.1(b)(1)(ii)." **Koken v. Lederman**, 840 A.2d 446, 448 (Pa. Commw. 2003).

[7] Trial Court Opinion, 2/25/2014, at 5.

[8] **Id.** at 7-8.

[9] **Id.** at 8.

testimony was necessary to demonstrate the elements of duty, breach, and causation; (4) the Institute "presented no expert testimony about the standards the jury should consider in evaluating whether the audit was properly or improperly done;"[10] and (5) because of the Institute's failure to recognize that it brought an action of professional negligence against a licensed professional entity, and presented no expert testimony at trial, the jury had no standards from a qualified witness by which to measure whether the audit and tax returns prepared by Battaglini were done properly or not). We conclude that the trial court's opinion properly disposes of the issues in this case. Accordingly, we affirm on the basis of that opinion while emphasizing the following.

Despite the Institute's attempt to portray its claim against Battaglini as a mere breach of contract case, the Institute's claim sounds in professional liability against an accountant. Furthermore, the Institute's arguments ignore the fact that the matter dealt with complex accounting issues and an expert witness was necessary to "elucidate complex issues for a jury of laypersons." *Varner v. Classic Cmtys. Corp.*, 890 A.2d 1068, 1074 (Pa. Super. 2006). Likewise, as noted by Battaglini, the Institute's argument

> ignores Battaglini's testimony that auditing standards dictated the use of the accrual method to arrive at a proper audit instead of the cash accounting method used by the Institute internally in its records and that such use of the accrual method was proper.

---

[10] *Id.* at 11.

> Without expert testimony contradicting Battaglini's testimony and providing a different standard for a proper audit to the jury, the Institute failed to meets its burden of proof[.].

Battaglini's Brief at 9. Accordingly, the court did not err in entering a directed verdict in favor of Battaglini.

Judgment affirmed.

Judge Bowes joins this memorandum.

Judge Strassburger concurs in the result.

Judgment Entered.

_____
Joseph D. Seletyn, Esq.
Prothonotary

Date: <u>1/14/2015</u>