J-A23020-17

**NON-PRECEDENTIAL DECISION - SEE SUPERIOR COURT I.O.P. 65.37**

| | | |
|---|---|---|
| WOODHILL ASSOCIATES, LP, | : | IN THE SUPERIOR COURT OF |
| | : | PENNSYLVANIA |
| Appellant | : | |
| | : | |
| | : | |
| v. | : | |
| | : | |
| | : | |
| GREGORY VOGELSPERGER, | : | No. 702 EDA 2017 |
| GEORGE VOGELSPERGER, PATRICIA | : | |
| VOGELSPERGER, TERRY | : | |
| VOGELSPERGER | : | |

Appeal from the Order Entered January 23, 2017
In the Court of Common Pleas of Bucks County
Civil Division at No(s): 2004-01559

BEFORE: PANELLA, J., DUBOW, J., and FITZGERALD, J*

MEMORANDUM BY DUBOW, J.: **FILED NOVEMBER 07, 2017**

Appellant, Woodhill Associates, LP, appeals from the Order entered in the Bucks County Court of Common Pleas denying Appellant's Motion to Remove Directed Verdict. After careful review, we vacate and remand.

Appellant is a real estate development partnership. In July 2001, Gregory Vogelsperger, George Vogelsperger, Patricia Vogelsperger, and Terry Vogelsperger (collectively, "Appellees"), entered into negotiations with Appellant to purchase Lot 9 in Appellant's Ely Farm subdivision. In conjunction with the real estate purchase agreement ("Purchase Agreement"), Appellees were also negotiating a contract with Appellant's builder-affiliate, Trueblood Co. ("Trueblood"), for the construction of a home on Lot 9 ("Construction Agreement").

_____
* Former Justice specially assigned to the Superior Court.

On December 14, 2001, Appellees executed the Purchase Agreement, agreeing to purchase Lot 9 for $295,000.00. Pursuant to the Purchase Agreement, Appellees provided Appellant with a $29,500.00 deposit in earnest money. The Purchase Agreement also required that Appellees enter into a Construction Agreement with Trueblood within 120 days.[1] If Appellees failed to enter into a Construction Agreement within the 120 days, the Purchase Agreement contained a liquidated damages provision ("Liquidated Damages Provision") which required Appellees to pay Appellant "the greater of $75,000.00 and the amount deposited." Specifically, the Purchase Agreement provided, in relevant part, as follows:

1. Consideration. The price or consideration shall be as follows:

   a. Two hundred and [ninety] five thousand ($295,000.00) for the property. At the signing of this Agreement, Buyer shall pay to Seller directly a ten percent (10%) deposit towards the purchase price for the lot. The balance for the Property shall be paid at settlement by certified funds, bank check, or title company check. **NOTE: Deposit received by Seller in the amount of $29,500.00.** (emphasis in original).

   b. The deposit shall be nonrefundable after Dec. 15, 2001.

   c. In entering into the Agreement, Buyer contemplates that it will enter into the construction agreement ("Construction Agreement") with Trueblood Company ("Trueblood") for the construction of a new home for Buyer on the Property. **In the event that Buyer and Builder fail to execute a Construction Agreement . . . within one hundred twenty [later amended to 240] days following the date of this Agreement,**

_____

[1] The parties later amended the Purchase Agreement to provide Appellees 240 days in which to enter into a Construction Agreement with Trueblood.

> **Buyer may terminate this Agreement . . . whereupon Buyer agrees to and shall pay to Seller an amount equal to the greater of Seventy-Five Thousand Dollars ($75,000.00) and the amount deposited by Buyer to Seller hereunder ("Liquidated Damages")**. . . (emphasis added).

Purchase Agreement, 12/14/01.

Settlement on the sale of Lot 9 occurred on January 4, 2002. As provided in the Purchase Agreement, the parties applied Appellees' $29,500.00 deposit towards the purchase price of Lot 9.

Appellees and Trueblood were not successful in negotiating a Construction Agreement. On January 28, 2003, Appellant sent a demand to Appellees for payment of $75,000.00 in liquidated damages for Appellees' failure to enter into a Construction Agreement with Trueblood.[2] Appellees did not pay the demanded liquidated damages. Thus, on March 11, 2004, Appellant initiated this litigation by filing a Complaint against Appellees for Breach of Contract.

On April 28, 2016, Appellant filed a Motion for Summary Judgment; Appellees filed a Motion for Summary Judgment on May 3, 2016. On August 18, 2016, the trial court denied both Motions.

On December 8, 2016, this matter proceeded to a non-jury trial. The parties agreed that the sole issue for determination was the proper

---

[2] Appellees later sold Lot 9 to a third-party for $319,000.00.

interpretation of the Liquidated Damages Provision. The parties disagreed as to which event triggered the payment of liquidated damages to Appellant and, if triggered, the amount of the liquidated damages.

Neil Trueblood, an officer of Appellant and of Trueblood, was the only witness to testify at trial. He testified that he had negotiated both the Purchase Agreement and the Construction Agreement with Appellees. N.T., 12/8/16, at 49. He stated that negotiations on the Construction Agreement continued until Appellees notified Trueblood that they were selling Lot 9. At that point, Appellant made a demand for liquidated damages. *Id.* at 50.

In addition, Trueblood confirmed that, as noted in Paragraph 1(a) of the Purchase Agreement, Appellees deposited $29,500.00 with Appellant. *Id.* at 66-67. The parties placed this amount in escrow and then credited this amount toward the total purchase price of Lot 9 at closing. This is evidenced by the HUD-1 Closing Statement.[3] *Id.* Trueblood further testified that he believed that the $68,000.00 listed as a "deposit" on the buyer's side of the HUD-1 Statement represented a payment on the land contract due at closing from the buyers (Appellees) to the seller (Appellant). *Id.* at 61-62, 66-68.

---

[3] Settlement statements like the HUD-1 at issue in this case are simply documents listing all charges and credits to the buyer and seller in a real estate settlement and are a product of the Real Estate Settlement Procedures Act ("RESPA"), 12 U.S.C. § 2601 *et seq.* The statements have two sides: one itemizing the charges and credits to the buyer, and one itemizing charges and credits to the seller.

Trueblood reiterated that Appellant had received only one deposit of $29,500.00 prior to closing and had not received a second deposit of $68,000.00. *Id.* at 62, 66-67. Appellees presented no specific evidence to counter this testimony.

The parties argued conflicting theories as to the amount of the deposit paid by Appellees. Appellant argued that Appellees had deposited only the initial $29,500.00 which was put into an escrow until closing and then credited toward the purchase price of Lot 9. Appellees, relying on the HUD-1 Statement prepared by the closing agent, argued that they had paid a total deposit of $97,500.00, comprised of the initial $29,500.00 escrow deposit and the $68,000.00 listed only on the "buyer's side" of the HUD-1 Statement as a "deposit." Appellees presented no evidence to support this averment.

Both parties moved for a Directed Verdict. The court ultimately granted Appellees' Motion, finding: (1) that Appellees' failure to enter into a Construction Agreement with Trueblood triggered the Liquidated Damages Provision of the Purchase Agreement; (2) that Appellees had paid Appellant a $97,500.00 deposit; and (3) because Appellees had paid the Appellant $97,500 before closing, Appellant was not entitled to any additional payment for liquidated damages.

On December 16, 2016, Appellant filed a Post-Trial Motion requesting the court to remove the Directed Verdict or, alternatively, enter Judgment in

Appellant's favor. The trial court denied Appellant's Motion,[4] and the Prothonotary entered Judgment in Appellees' favor on February 22, 2017.

This timely appeal followed. Appellant and the trial court complied with Pa.R.A.P. 1925.

Appellant raises the following four issues on appeal:

1. Does a plain reading of the parties' agreement support a directed verdict for [Appellees]?

2. Did [Appellant] retain countable deposits barring it from the liquidated damages specified in the parties' agreement?

3. Did the court below focus on an immaterial issue?

4. Did the court below follow correct post-trial procedures in ruling on [Appellant's] [P]ost-[T]rial [M]otion without the opportunity for briefing and argument?

Appellant's Brief at 2.

Appellant's first three issues are interrelated; thus, we address them together. Appellant challenges the trial court's conclusion that Appellant was not entitled to liquidated damages, even though it had found that Appellees had breached the Purchase Agreement. *Id.* at 14-16. Appellant argues that the trial court erred by: (1) misconstruing the HUD-1 settlement sheet prepared for the closing to find that Appellant had received a $97,500.00 "deposit" from Appellees; (2) overlooking the clear intent of the parties as set forth in the Liquidated Damages Provision; (3) concluding that Appellees had

---

[4] Appellant had filed a Motion for Reconsideration of the court's January 23, 2017 Order denying Appellant's Motion to Remove Directed Verdict on February 3, 2017. The trial court did not rule upon this Motion.

made more than one deposit to Appellant; and (4) finding the use by the parties of the conjunctive "and" material to its disposition. *Id.* at 18-27.

We review an Order entering a Directed Verdict with the following in mind:

> In reviewing the trial court's grant of a motion for a directed verdict, our scope of review is limited to determining whether the trial court abused its discretion or committed an error of law that controlled the outcome of the case. It is clear, therefore, that a directed verdict may be granted only where the facts are clear and there is no room for doubt. Moreover, in deciding whether to grant a motion for a directed verdict, the trial court must consider the facts in the light most favorable to the nonmoving party and must accept as true all evidence which supports that party's contention and reject all adverse testimony.

*Fetherolf v. Torosian*, 759 A.2d 391, 393 (Pa. Super. 2000) (citations and quotation marks omitted).

Appellant's claim requires us to consider the language of the Purchase Agreement. "Because contract interpretation is a question of law, this Court is not bound by the trial court's interpretation." *Ragnar Benson, Inc. v. Hempfield Tp. Mun. Authority*, 916 A.2d 1183, 1188 (Pa. Super. 2007) (citing *Stamerro v. Stamerro*, 889 A.2d 1251, 1257 (Pa. Super. 2005)). "Our standard of review over questions of law is *de novo* and to the extent necessary, the scope of our review is plenary as the appellate court may review the entire record in making its decision." *Id.*

Our Supreme Court has set forth the principles governing contract interpretation as follows:

The fundamental rule in contract interpretation is to ascertain the intent of the contracting parties. In cases of a written contract, the intent of the parties is the writing itself. When the terms of a contract are clear and unambiguous, the intent of the parties is to be ascertained from the document itself. [ ] When, however, an ambiguity exists, parol evidence is admissible to explain or clarify or resolve the ambiguity, irrespective of whether the ambiguity is patent, created by the language of the instrument, or latent, created by extrinsic or collateral circumstances. A contract is ambiguous if it is reasonably susceptible of different constructions and capable of being understood in more than one sense. While unambiguous contracts are interpreted by the court as a matter of law, ambiguous writings are interpreted by the finder of fact.

***Ins. Adjustment Bureau, Inc., v. Allstate Ins. Co.***, 905 A.2d 462, 468-69 (Pa. 2006) (citations omitted).

In the instant case, the plain language of the Liquidated Damages Provision, as amended on January 4, 2002, is unambiguous. It provides that, in the event that Appellees failed to enter into a Construction Agreement within 240 days of January 4, 2002, Appellees must pay to Appellant the greater of either $75,000.00 or the amount previously deposited by Appellees to Appellant. This interpretation of the Liquidated Damages Provision is the same whether the drafter used the conjunctive "and," or the disjunctive "or" when instructing that Appellees pay the greater of two numbers.

The trial court found that Appellees had failed to enter into a Construction Agreement with Trueblood within 240 days of the closing on the sale of Lot 9, thus, breaching the Purchase Agreement. It further concluded that Appellees' breach triggered the Liquidated Damages Provision. Based on the foregoing, we agree with these determinations.

However, we conclude that the court erred as a matter of law in concluding that Appellant is not entitled to a payment of liquidated damages as provided in the Purchase Agreement. By misreading the HUD-1 Statement and misapprehending the parties' Purchase Agreement, the court reached an unsupportable conclusion that Appellant had already received the greater of $75,000 and the deposit (which according to the court was $97,500.00).

In calculating whether the amount of the deposit Appellees' paid to Appellant exceeded $75,000.00, the trial court considered: (1) the parties' Purchase Agreement, which noted the payment of a $29,500.0 deposit; and (2) the HUD-1 Statement prepared by the closing agent in which the buyer's side characterized $68,000.00 as a "deposit." The seller's side did not contain a matching entry, and there was no evidence submitted to show that the $68,000 was anything other than a payment owed by Appellees at closing towards the purchase price.

Viewing the evidence in the light most favorable to Appellant as the non-moving party as we must, we conclude that the court improperly determined from the HUD-1 Statement that Appellees had made two separate deposits to Appellant totaling $97,500.00. Instead, the evidence reasonably demonstrates that Appellees paid a deposit to Appellant in the amount of $29,500.00.

Further, because Appellees' conduct triggered the Liquidated Damages Provision and we conclude that Appellees paid a deposit under the Purchase Agreement in the amount of $29,500.00, Appellant is entitled to liquidated

damages of $75,000.00, which is the greater of $75,000.00 and the $29,500.00 deposit paid by Appellees pursuant to the Purchase Agreement.[5]

In sum, in entering Appellees' Motion for a Directed Verdict, the trial court erred as a matter of law by failing to "consider the facts in the light most favorable to the non[-]moving party." *Fetherolf*, 759 A.2d at 393. Further, the evidence of record supports Appellant's position with respect to the interpretation and application of the Purchase Agreement. Accordingly, Appellant is entitled to Judgment as a matter of law.[6]

Order vacated. Case remanded for entry of Judgment in Appellant's favor in the amount of $75,000.00. Jurisdiction relinquished.

Judge Panella joins the memorandum.

_____

[5] Further, the trial court erred in its implicit holding that the amount of Appellees' deposit should be deducted from the amount of liquidated damages allowable under the Purchase Agreement. There is nothing in the Liquidated Damages Provision that says any deposit made is to be subtracted from whatever is due under the Liquidated Damages Provision. Rather, the contract simply provides that liquidated damages are the greater of $75,000.00 and the amount deposited. Here, the greater of the two is $75,000.00; therefore, Appellees are obligated to pay $75,000.00 to Appellant pursuant to the Agreement. Moreover, there is no evidence that Appellant retained the deposit of $29,500.00 in addition to receiving the full sales price of $295,000.000. And, even if Appellant **did** retain the $29,500.00 deposit, and also received the full $295,000.00 purchase price at closing, there is no language in the Liquidated Damages Provision that would authorize a reduction in the amount of liquidated damages owed in the event the parties' actions or failures to act triggered the payment of liquidated damages.

[6] In light of our disposition we need not reach Appellant's fourth issue that the trial court erred in ruling on its Post-Trial Motion without giving Appellant the opportunity to brief and argue the Motion.

Judge Fitzgerald concurs in the result.

Judgment Entered.

Joseph D. Seletyn, Esq.
Prothonotary


Date: <u>11/7/2017</u>